In re BERKSHIRE CHEMICAL
HAULERS, INC., Debtor.

MOTOR TRUCK AND TRAILER CO.,

v.

BERKSHIRE CHEMICAL HAULERS,
INC., Defendant.

Bankruptcy No. 4–81–00428–G.
Adv. No. 4–81–0413.

United States Bankruptcy Court,
D. Massachusetts.

May 28, 1982.

Gerard D. Downing, Katz & LaPointe, Pittsfield, Mass., for plaintiff.

Michael J. Ripps, North Adams, Mass., for defendant.

## MEMORANDUM AND ORDER

PAUL W. GLENNON, Bankruptcy Judge.

Plaintiff Motor Truck and Trailer Company ("Motor Truck") seeks the return from the debtor of four line-haul tractors which, it is agreed, were leased to the debtor in November, 1979 for approximately a four year term. The debtor argues that the vehicles are essential to its continued business life and that it has offered adequate assurance of future performance of its lease obligations by the submission of a plan of arrangement and financial statements which contemplate a profitable future for the debtor and the ability to make a complete payment of its lease obligations by October, 1983. The following represents findings of fact and conclusion of law both on Motor Truck's Complaint for Relief from Stay and on its Application for Order Directing the Debtor to Assume or Reject Lease.

### FACTS

In November, 1979, the debtor and Motor Truck entered into a lease agreement concerning four line-haul tractors. The agreement specified a lease term for two trucks of 44 months, and a lease term of 48 months for the remaining two trucks. The fixed monthly rental was as follows:

| | | |
|---|---|---|
| a. | Vehicle No. 7466 | $1228.92 |
| b. | Vehicle No. 7467 | $1228.92 |
| c. | Vehicle No. 7475 | $1508.92 |
| d. | Vehicle No. 7476 | $1559.16 |
| | Total monthly rental | $5525.92 |

The debtor has made all payments under its lease through January, 1981. On May 21, 1981 the debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 1101, et seq., as amended by P.L.95–598 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. On June 7 and 8, 1981, Motor Truck, with notice of the automatic stay under § 362(a) of the Code (11 U.S.C. § 362), reclaimed and removed three tractors from the debtor's premises, which were ultimately returned to the debtor on June 15, 1981. On November 16, 1981, Motor Truck filed its Complaint for Relief from Stay alleging that $33,155.52 had not been paid on its lease since the filing of the Chapter 11 petition, and that $16,589.76 was owed on pre-petition lease obligations. Prior to a hearing on January 23, 1982, the debtor tendered three separate checks to Motor Truck in the total amount of $13,315.05, each check being in the amount of $4,438.35 and purportedly representing the one month rental obligation for 3 out of 4 trucks.

On February 11, 1982, Motor Truck filed its Application for Order Directing the Debtor to Assume or Reject a Lease under 11 U.S.C. § 365(d)(2). After an evidentiary hearing on March 23, 1982, the Court took the matter under advisement. At the hearing, the debtor argued that § 365 of the Code was inapplicable to this case because its contract with Motor Truck was not executory. Further, the debtor attempted to show that, since the filing of its Chapter 11 petition, it had all but eliminated its operating losses and that financial projections indicated that a net surplus of $33,000 would exist at the end of 1982 which could be used to reduce its lease obligation to Motor Truck.

At this point I think it is appropriate to note that between May 21, 1981, the filing date, and March 23, 1982, the debtor had paid only $13,315.05 to Motor Truck on its lease. Using the lease agreement itself,

and the figure of $5,525.92 per month which was due on the 25th of every month, the debtor's post-petition lease obligations amounted to $55,259.20, for ten months.[1] Reducing the amount by $13,315.05, the Court is left with the conclusion that $41,944.15 in post-petition rental payments remained unpaid as of March 23, 1982. Furthermore, since Motor Truck had not been previously paid since January, 1981, there existed a 3 month arrearage in pre-petition lease payments of $16,517.76.[2]

## DISCUSSION

The debtor has proposed to repay its lease obligations under its plan of reorganization over the next 18 months. It is clear that § 365(a) permits a trustee to assume an unexpired lease, and that § 1107(a) gives the debtor in possession the same power. It is also clear that the debtor who wishes to assume an unexpired lease must satisfy three conditions. Subsection (b)(1) of § 365 provides:

(b)(1) If there has been a material default in an executory contract or unexpired lease of the debtor, the trustee [or debtor, in this case] may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease. 11 U.S.C. § 365(b)(1).

This provision in the new Bankruptcy Code is a codification the long-standing rule that when a trustee in bankruptcy or a debtor in

---

1. This computation does not include the additional $5,525.92 which would have been due only two days after the hearing.

2. This amount is unaffected by the later payments of the debtor, since the pre-petition amount would either be cured by assumption of the lease, or would be the subject of an unsecured dividend under a plan.

possession elects to ratify, confirm and adopt an unexpired lease, they thereby assume the liabilities of the debtor thereunder. *Greif Bros. Cooperage Co. v. Mullinix*, 264 F. 391 (8th Cir. 1920). If the debtor wishes to have the benefits of its unexpired lease it must also accept the burdens.

Here, there has most definitely been a material default by the debtor under its lease. The question presented is whether the debtor's proposed method of curing the default is proper and, if so, whether the payments proposed under the plan constitute adequate assurance of prompt cure, of prompt compensation, and of future performance.

■ It is clear that subsection (b)(1) of § 365 applies to defaults that occured both before and after the commencement of a bankruptcy case. *Matter of Luce Industries, Inc.*, 8 B.R. 100, 104 (Bkrtcy.S.D.N.Y. 1980). Moreover, pursuant § 1123(b)(2) of the Code, a debtor's plan may provide for assumption of any unexpired lease not previously rejected. 11 U.S.C. § 1123(b)(2); see also *In re The Hub of Military Circle, Inc.*, 13 B.R. 288 (Bkrtcy.E.D.Va.1982). Thus, there would appear to be ample statutory and case authority for the debtor's right to assume its lease with Motor Truck through a provision in its plan of reorganization, and to be permitted to cure both pre-petition and post-petition defaults therein. The only remaining question then is whether the proposal under its plan satisfies the requirements of § 365(b)(1).

Section § 365(b)(1) requires a three part analysis. First, the debtor, to be able to assume its lease, must either cure, or provide adequate assurance that it will promptly cure, its default. Here the debtor does not propose to immediately cure its default through a cash payment, but instead, argues that the payments proposed under its plan of reorganization provide adequate assurance of a prompt cure. Second, the debtor must compensate, or

provide adequate assurance that it will promptly compensate, Motor Truck for any actual pecuniary loss to Motor Truck resulting from such default. Motor Truck has introduced no evidence of any actual pecuniary loss at this time. Third, the debtor must provide adequate assurance of future performance under its lease, to which the debtor has introduced financial statements and projections for its financial viability. For reasons which I shall discuss, the Court holds that the debtor has not satisfied the requirements of § 365(b)(1), and therefore cannot be permitted to assume the lease in question.

■ First, let me say that the debtor's argument that § 365 does not apply here because the contract is not executory is misplaced. Section § 365 speaks of executory contracts *and* unexpired leases. Moreover, the debtor has not argued that the lease in question was anything other than a true lease.[3] Therefore, § 365 is the proper statutory reference for this matter.

■ Turning to the first issue, whether the debtor's plan offers adequate assurance of a prompt cure of its default under the lease, the debtor has offered to pay all outstanding pre- and post-petition arrearages by the end of the lease period, namely by October, 1983.

Section § 365(b)(1) attempts to strike a balance between two sometimes competing interests, the right of the contracting nondebtor to get the performance it bargained for [footnote omitted] and the right of the debtor's creditors to get the benefit of the debtor's bargain. [citations omitted]. Nowhere is the tension between these interests, and the difficulty in striking the balance, more apparent than in trying to determine whether there is the requisite adequate assurance of future performance. *Matter of Luce Industries, Inc.*, supra at 107.

In *Luce Industries* it was held that a promise or similar lesser assurance will not be

---

3. For instance, § 365 may not be applicable to a conditional sale where a lease is taken as security for the sales price. However, the debtor has made no indication, nor introduced any evidence, that would lead the Court to believe that the Motor Truck lease is anything but a true lease.

458

adequate to cure monetary default. In the case of *In re Bronx-Westchester Mack Corp.*, 4 B.R. 730 (Bkrtcy.S.D.N.Y.1980) it was held that adequate assurance requires cash or collateral that is nonspeculative, positive and sufficiently substantial so as to assure [the Lessor] that it will realize the amount of the default. On the other hand, the *Luce Industries* case did say that "the assurance required will fall *considerably short* of an absolute guaranty of performance." *Matter of Luce Industries, Inc.*, supra at 107.

In the case at bar, the debtor has offered to return one of the four tractors to Motor Truck, and to pay $4,438.35 per month on the remaining three tractors until October 1983, when all arrearages will have been cured.[4] The debtor's plan certainly does not provide for full payment of the arrearage, but at the hearing on March 23, 1982, the debtor indicated that other monies would be available to cure its arrearage.[5] Where these monies are to come from is not clear, but apparently the debtor anticipates that over the next 18 months, it will generate more than $50,000 in new profits to pay Motor Truck.

The Bankruptcy Code speaks of a "prompt cure", or "adequate assurance of a prompt cure". In at least one case, prompt cure meant an immediate payment. *In re Lafayette Radio Electronics Corp.*, 9 B.R. 993 (Bkrtcy.E.D.N.Y.1981). However, what is a prompt cure can often vary according to the circumstances of a given case. I therefore would disagree with the holding of *General Motors Acceptance Corp. v. Lawrence*, 11 B.R. 44, 45 (Bkrtcy.N.D.Ga. 1981), where the Court felt it unlikely that a period of time in excess of one year would ever be considered a "prompt cure". For instance, a debtor with 90 years remaining on a 99 year lease, who proposes to cure its arrearage by monthly payments over an 18

month period, might be found to have offered adequate assurance of a *prompt cure.* On the other hand, where in this case ·the debtor's offer to cure its lease default over the next 18 months contemplates the final payment being made contemporaneously with the expiration of the lease term, I cannot say that any Court, under any circumstances, would find that such a proposal qualifies as a ·*"prompt"* cure under § 365(b)(1).

Even if the time period were found to be prompt, there would be the additional question of whether a prompt cure was "adequately assured". The viability of the debtor's business and the accuracy of its business projections would be factors in any such determination.

The debtor's financial statements reveal that through February 1982, representing approximately 2½ years of operation, the debtor had suffered a net loss of more than $24,000. However, the debtor is quick to point out that during the Chapter 11 proceeding its monthly net loss has been reduced to the point that in February, 1982, the debtor suffered only a $696.88 loss, indicating that the debtor is ready to break into the profit column. Nevertheless, the debtor's economic resurgence has come at the expense of Motor Truck, who was not paid for almost one year. Thus, even without making payments to Motor Truck, the debtor was unable .to make a profit. It now asks Motor Truck to accept its prognosis of future profitability in return for continued performance under the lease.

■ This Court can envision many cases where the promise to cure a default out of future profits might be sufficiently assured as to warrant approval of such a proposal. But, in the case before the Court there is no past history of profitability, there is no competent evidence of future profitability, and the debtor's projections seem nothing

---

4. Using $4,438.35 as a base figure, and calculating the lowest possible monthly rental on any three remaining vehicles, the best that could be done would be that the debtor could realize $471.59/month toward it arrearage. At such a rate, it would take the debtor more than 10 years to cure its current arrearages.

5. A "Business Analysis" submitted with other documents indicates that $25,000 would be paid to Motor Truck by January, 1983; $26,000 by June, 1983; and $10,208.08 by October, 1983, when the lease expires.

more than pipe dreams. For instance, the debtor's own sales records indicate that total revenues for the period ending September 30, 1981[6] were $403,674.05, which is a monthly average of $33,639.50 per month. For the period October 1, 1981 through February 28, 1982, a period of five months, the debtor's total revenues were $176,645.32, or a monthly average of $35,329.06. Thus, the debtor's records indicate only a $1700 increase in monthly revenues, from which it must fashion $58,000 over the next 18 months. Assuming, as the debtor has argued, that it has already reduced its operating costs substantially, the only means left for generating sufficient profit to pay off Motor Truck is through a sufficient increase in sales revenue. While I have no doubt that the debtor is confident of its ability to expand its operations, I also have no doubt that such "confidence" is not the stuff of which "adequate assurance" is meant to consist. This Court, in ruling on the question of assumption of a lease, must be *reasonably* satisfied that if the debtor is not going to cure immediately, that it will be *able* to do so within a period of time deemed to be prompt. What is adequate assurance, both for purposes of a prompt cure and for future performance, will depend again on individual circumstances. However, it is this Court's ruling that a debtor who seeks to provide adequate assurance of payment, both on its defaulted lease obligations and on its future lease obligations, out of future business operations, must show a sufficient likelihood of profitability such that the Court would be reasonable in assuming that the debtor could satisfy its obligations under § 365(b)(1). Here, not only has the debtor not shown that it can provide adequate assurance of prompt cure, but it has failed even to show that it could meet its future obligations currently. This debtor has never had a profitable month of operation, even with 12 months of protection from this Court, and has failed to show that it can ever be sufficiently profitable as to warrant the continuing burden of the lease in question. This Court cannot gamble on the business judgment of a debtor at the risk of continuing harm to a creditor who would otherwise be entitled to the return of its property.

Finally, there is still pending a Complaint by the debtor seeking damages from Motor Truck for its willful violation of the automatic stay. Because there had been no evidence introduced on that question, and because the outcome of that suit will not materially affect my decision today, I defer any judgment on that issue until a future hearing can be held.

## CONCLUSION

Having thus decided that assumption of the Motor Truck lease is not warranted under the circumstances presented, the debtor is therefore directed to reject said lease as unduly burdensome. However, recognizing that the debtor needs replacement vehicles to continue its operation, I shall continue the automatic stay in effect for ten (10) days from the date of this order, so that the debtor might seek alternative leasing arrangements. At the close of business on the tenth day after the date of this order, the debtor's lease shall be deemed terminated, the automatic stay deemed lifted as to Motor Truck, and the debtor shall make available at its principal place of business the vehicles currently in its possession, so that Motor Truck might take possession of the same. SO ORDERED.

---

**6.** I am assuming that this figure is a year-end figure, although the statement does not so indicate.