In the Matter of HAFFNER'S 5 CENT TO $1.00 STORES, INC., Debtor.

Bankruptcy No. 81–10031.

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

Jan. 31, 1983.

H. Charles Winans, Garrett, Ind., trustee.

Charles Loeser, Fort Wayne, Ind., for debtor.

Richard Samek, Fort Wayne, Ind., for A & M Realty, Inc.

Paul J. Sauerteig, Fort Wayne, Ind., for Dollar Gen. Corp. and Dolgencorp, Inc.

## ORDER

ROBERT K. RODIBAUGH, Bankruptcy Judge.

On January 7, 1982, Trustee in this Chapter 11 case applied to this court for authority to assume and assign two leases. The debtor, Haffner's 5 Cent to $1.00 Stores, is the lessee on both. One was for a store in a shopping center in Wauseon, Ohio, and the other for a store in a shopping center in Kendallville, Indiana. There is no problem

with the assumption and assignment of the Wauseon, Ohio, property. A–M Realty, Inc., the successor in interest to the landlord of the Kendallville store, made a timely objection to debtor's application in regard to that lease. On January 28, 1982, a hearing was held on the matter, time was allowed for the parties to file further memoranda or briefs, and the matter was then taken under advisement on February 26, 1982.

The Kendallville lease dated from April 15, 1964. It contained a no-assignment clause:

> It is agreed and understood that the tenant shall not sell or assign this lease, or any interest in the leased premises, or sublease the same or any part thereof, without first obtaining the written consent of the Landlord. (Lease p. 16)

On November 18, 1980, the debtor herein, Haffner's entered an asset purchase agreement with Dollar General Corporation and Dolgencorp, Inc. (hereinafter Dolgencorp), whereby Dolgencorp purchased most of Haffner's assets, among which was the inventory of the store located in the Kendallville shopping center. One of the conditions of sale was that Haffner's assign to Dolgencorp any interest held by them in the lease of the premises. A–M Realty states that Dolgencorp, prior to the December 1, 1980, sale, requested their consent to the assignment of the leasehold to Dolgencorp, and that A–M refused. A–M filed suit in state court against both Haffner's and Dolgencorp, alleging breach of the lease agreement and asking for possession of the property and for damages.

On January 19, 1981, an involuntary petition for a declaration of bankruptcy in chapter 7 was filed against Haffner's. On April 14, 1981, Haffner's filed to convert the case to a chapter 11. In October, 1981, a Trustee, H. Charles Winans, was appointed, and he took over the management of this estate on November 1, 1981. Since that date, he has representated the debtor.

Haffner's affairs when the Trustee took over were complicated. The main asset of the estate, according to his accounts and his uncontradicted testimony at the hearing, is the money, about $500,000, that was obtained from the sale of assets to Dolgencorp. The money is being held in escrow and is earning interest. It will be the source of payment to Haffner's creditors. At the hearing it was stated that Dolgencorp was the only purchaser of assets that Haffner's could find. Since the sale, Dolgencorp has occupied the Kendallville store premises, regularly paying rent to lessor A–M. Dolgencorp operates the same kind of retail business that Haffner's had been operating there.

The automatic stay imposed by the bankruptcy filing against the state court suit of A–M against Haffner's and Dolgencorp was modified by stipulation of both parties by order of this court on August 28, 1981. The case was set for trial in Allen County in May, 1982. The parties had stipulated that no compensatory damages would be asked against Haffner's. On May 20, 1982, the plaintiff A–M filed a motion in Allen County Court to dismiss debtor Haffner's from the suit without prejudice.

Bankruptcy Code § 365 [1] gives a Trustee broad power to assume debtors' leases, and assign them in spite of an anti-assignment clause in the lease.[2] The purpose of the statute is to assist the Trustee in protecting the assets of the estate, both to assist in its reorganization and to enable it to pay its creditors. The purpose has been described as follows:

> Section 365 constitutes the most detailed legislative effort to date to define and to codify the rights of bankrupt tenants. Its language and its legislative history reflect a congressional intent to protect the equity of tenants in their leaseholds. It represents a potentially important lifeline to debtors having significant assets in the form of leaseholds, a lifeline which can be of critical importance to their creditors. If the bankruptcy courts see the statute as one which embodies the broad policy objective of preserving the

1. 11 U.S.C.A. § 365 (West 1979).

2. *Id.*, (f).

value and marketability of leases held by bankrupt tenants where this can be accomplished without demonstrable injury to the interests of their landlords, section 365 can play a critical role in assisting debtors to reorganize and in enabling their creditors to receive payment of at least a portion of the obligations owed to them.[3]

The assets of the debtor here are of "critical importance" to its creditors, and the Trustee is bound to protect them in any way the Code allows. The Trustee stated in his application that the ability to assign this lease to Dolgencorp would simplify the affairs of the debtor, and the practicality of his request is evident: it would clear the estate's right to its major asset, and would remove any possibility of involvement in a lawsuit. Section 365(k) "relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment."[4]

Trustee here, by his application, necessarily rejects the earlier stipulation, made by debtor in possession before a trustee had been appointed, modifying the automatic stay, because his assumption and assignment of the lease would moot any state court action. We will, therefore, construe the Trustee's application as a motion for reconsideration of our order modifying that stay.

To determine whether to grant this application over A–M's objection, we turn to an examination of the powers given the Trustee and the limitations upon those powers in section 365. The power to assign a lease is given in subsection (f):

(f)(1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or

lease under paragraph (2) of this subsection.

(2) The trustee may assign an executory contract or unexpired lease of the debtor only if—

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.[5]

A–M bases its objection mainly upon the limitation of subsection (c), which reads:

(c) The Trustee may not assume or assign an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to the trustee or an assignee of such contract or lease, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or such assignment.[6]

Objector claims that the "applicable law" here would be an adjudication in state court that debtor breached its lease by attempting to assign it. However, section (c)(1)(A) is generally understood to refer to contracts for nondelegable personal services, and not to leases for the occupancy of real property. As another court said: "... the exception to the general rule of the assignability of contracts was intended by Congress to be applied narrowly and to such circumstances as contracts for the performance of nondelegable duties."[7] Thus A–M's objection cannot rest upon subsection (c). The only further applicable limitation upon the Trus-

---

3. Simpson, *Leases and the Bankruptcy Code,* 38 Bus.Law. 61 (1980).

4. 11 U.S.C.A. § 365(k).

5. *Id.,* (f).

6. *Id.,* (c)(1).

7. *In re Taylor,* 6 B.R. 370, 372 (Bkrtcy.N.D.Ga. 1980).

tee's ability to assign a contract is contained in the language of (f)(2)(B), saying he may assign "only if ... (B) adequate assurance of future performance by the assignee of such contract or lease is provided."[8] In this case the proposed assignee is operating a business of the same kind as the debtor had been operating, and has been paying the rent regularly; we find that this satisfies the "adequate assurance" requirement of (f)(2)(B). Specific protections given shopping center leases in § 365(b)(3) are limited to cases of default in the lease or contract being assumed.[9] Even if the definition of "adequate assurance" in subsection (b) were applied to subsection (f), its repeated use of the word "substantially" (as in "(B) that any percentage rent due under such lease will not decline *substantially;* (C) ... not breach *substantially;* (D) ... not disrupt *substantially* any tenant mix or balance...")[10] clearly implies the possibility of some, non-substantial, change taking place. As the Simpson article points out, this language supports the proposition that the bankruptcy court may change some of the terms of a lease.[11] Here, it does not appear that any of the terms of the lease will be changed by this assignment other than the anti-assignment clause. That clause, Section 365(f)(1) gives the Trustee explicit authority to override. Dolgencorp, the proposed assignee, will be bound by all the other terms of the lease.

> If a lease is proposed to be assigned to an assignee who will use the premises only as expressly permitted, or as not prohibited, by the terms of the lease, such use is inherently in compliance with the parties' bargained-for exchange.[12]

Under the circumstances here—Dolgencorp being bound by the lease, paying rent, and operating a business of the same kind as the assignor—we find that no arguments A–M might have presented as to assignee's effect on its tenant mix, for example, could have prevailed in this court. The Trustee's application is a proper exercise of the powers given him by section 365(f). As another court said, "Provision of future performance does not require an assignee's literal compliance with each and every term of the lease. The court may permit deviations of any provision including a use clause."[13]

Objector's argument that by using the extraordinary powers of the bankruptcy court debtor is doing what he could not have done in a state court proceeding does not present a legal objection. The Code does allow a Trustee in bankruptcy the power to assign, despite an anti-assignment clause, and Congress clearly intended it to do so:

> Section 365 expresses a clear Congressional policy favoring assumption and assignment. Such a policy will insure that potential valuable assets will not be lost by a debtor who is reorganizing his affairs or liquidating assets for distribution to creditors.[14]

We find that the reasons for Trustee's application to use that power here are well within the intentions of the statute, being in the interest of preserving and protecting a major asset of the estate.

Therefore, we grant Trustee's application of January 7, 1982, to assume and assign the two leases. At the same time, we construe his application as a motion to reconsider our order of August 28, 1981, in Adversary Proceeding 81–1068, modifying the automatic stay of § 362,[15] and hereby rescind that order. Accordingly, the automatic stay continues without modification.

SO ORDERED.

---

**8.** 11 U.S.C.A. § 365(f)(2)(B).

**9.** 11 U.S.C.A. § 365(b)(3).

**10.** Id., (emphasis added).

**11.** *See* Simpson, *supra* n. 3, at 74.

**12.** *Id.,* 76.

**13.** *In re U.L. Radio Corp.,* 19 B.R. 537, 544 (Bkrtcy.S.D.N.Y.1982).

**14.** *Id.*

**15.** 11 U.S.C.A. § 362 (West 1979).