## In re COORS OF NORTH MISSISSIPPI, INC., Debtor.

### Bankruptcy No. E83–10017.

United States Bankruptcy Court,
N.D. Mississippi.

March 4, 1983.

Earle D. Bellamy, II and Edward A. Walters, Bradley, Campbell & Carney, Golden, Colo., for Adolph Coors Co.

Frank W. Trapp, Walker W. Jones, III, Jones, Mockbee & Bass, Jackson, Miss., for both debtor corporations.

DeWitt Hicks, Columbus, Miss., for Merchants & Farmers Bank.

W. Reed Hillen, III, Tupelo, Miss., for Bank of Mississippi.

W. Dean Belk, Indianola, Miss., for Planters Bank & Trust Co.

Stephen L. Thomas, Mansour & Thomas, Greenville, Miss., for Bank of Longview, South Delta Imp., Inc. and Charles A. Moak.

Frank O. Crosthwait, Jr., Indianola, Miss., for Peoples Bank.

Douglas J. Smith, Jr., Greenville, Miss., for Unsecured Creditors' Committee of Old South Coors, Inc.

Jerry Hill, Longview, Tex., for East Texas Bank.

William C. Hammack, Meridian, Miss., Personal Atty. for Ben Brewer, President of both debtor corporations.

## MEMORANDUM OPINION

EUGENE J. RAPHAEL, Bankruptcy Judge.

On January 18, 1983, debtor filed its voluntary petition under chapter 11 of the 1978 Bankruptcy Code. On February 1, 1983, debtor filed its statement of financial affairs and schedules.

This case is before the court on motion of the debtor-in-possession filed on February 15, 1983, seeking the court's approval of the assumption by debtor-in-possession of the debtor's executory distributorship agreement with the Adolph Coors Company to distribute Coors beer in Northwest Mississippi and on the motion of debtor-in-possession filed on February 10, 1983, for court approval of its proposed assignments of said executory distributorship agreement rights to certain proposed assignees. Said motions were consolidated for a hearing which commenced on February 25, 1983, was recessed until March 1, 1983, and was concluded on the latter date. The court reserved its decisions on said motions, but now addresses the merits of said motions on a consolidated basis.

At the end of evidentiary presentations made by the several litigants on February 25, 1983, all parties rested as to their evidentiary offerings. The totality of evidence in the record at that time indicated that debtor and the Adolph Coors Company had done business with each other under an

ostensible written distributorship agreement which included, inter alia, a clause essentially reading as follows:

### SALE OF DISTRIBUTORSHIP

The distributorship may be sold on terms mutually agreeable to the buying and selling parties, provided Coors has given its approval of the new owner in writing. Coors shall have complete discretion to approve or disapprove such prospective purchaser on grounds sufficient in Coors' sole judgment. Coors specifically shall have the right to disapprove the prospective buyer if in Coors' judgment the terms of sale of the distributorship between the seller and prospective buyer are such that the prospective buyer does not have a reasonable opportunity to make a financial success of the distributorship. No sale shall be completed until all accounts between the seller and Coors have been settled and a complete, absolute, mutual release executed and delivered to the said parties.

It was not until the time scheduled for the closing arguments of counsel on March 1, 1983, that the court was advised by counsel both for debtor-in-possession and for Adolph Coors Company in a stipulated announcement that debtor never received from Adolph Coors Company a written distributorship agreement, but that both debtor and Adolph Coors Company had treated their business relationships as if there had been such a written agreement in an identical form, except as to "filling in the blanks", as that set forth in Exhibit "A" in this record. Exhibit "A" does include, inter alia, a sale of distributorship clause identical to that set forth hereinabove. Under these circumstances, this court is of the opinion that debtor, debtor-in-possession and the Adolph Coors Company are jointly and severally estopped to deny the existence of such a written distributorship agreement between them. Accordingly, this court will look to the provisions of said Exhibit "A", although it mentions another corporation as being the distributor, as a reference point for the court's deliberations herein and as substantially embodying the contractual relationship under which debtor, debtor-in-possession and the Adolph Coors Company have operated and continue to operate.

When the petition was filed herein, debtor was indebted to the Adolph Coors Company for unpaid purchases of beer in an amount substantially in excess of the balance remaining due at the time of the hearing on February 25, 1983. At the time of said February 25, 1983, hearing, various witnesses fixed the then remaining delinquency for unpaid purchases of beer at varying amounts between $110,000.00 and $115,000.00. Upon the filing of said chapter 11 petition by debtor, the debtor-in-possession was required by the Adolph Coors Company to make advance payments for each further shipment of beer as well as to make certain payments on the basis of 50¢ per case on pre-petition indebtedness in order to make such additional purchases and stay in business. At the time of said February 25, 1983, hearing the payments on pre-petition indebtedness were said to have aggregated approximately $60,000.00. Debtor-in-possession has filed a counterclaim to a reclamation complaint in this court to reclaim said payments on pre-petition indebtedness as assets of the estate. The hearing on these motions has shown probable cause that such payments on pre-petition indebtedness constituted involuntary preferences paid from the estate. Such demands for preferential treatment, though not entirely dispositive of the issues herein, constitute factors which may be considered by this court in the resolution of the dispositive issues herein. Anticipating that such preferential payments may be the subject of future repayment, the Adolph Coors Company insisted at the hearing of these motions that the approximate amount of $60,000.00 in pre-petition payments should be added to the indebtedness ranging between $110,000.00 and $115,000.00 in connection with the resolution of questions pertaining to curing the default promptly and adequate assurance of future performance under the executory agreement. The court makes short shrift of that argument inas-

much as the evidence on these motions shows that such pre-petition indebtedness payments have actually been made to the Adolph Coors Company, which has enjoyed the use of said money. Arguments as to the potential for future repayments are speculative and do not reflect the current bookkeeping balance.

There are in evidence on these motions proposed assignments of the aforementioned executory distributorship agreement, under language allocating certain counties in Northwest Mississippi to each proposed assignee, whereby substantial portions of the territory heretofore served by debtor or debtor-in-possession may be served in the future by the proposed assignees. Although certain counties in close proximity to Greenwood, Mississippi, are not included in said proposed assignments, that area would continue to be served by the debtor-in-possession pending a potential future assignment to another assignee.

Suffice it to say without great elaboration that each and every one of the proposed assignees who have executed such proposed assignments of distributorship rights is a long-established beer wholesaler of various other brands of beer, enjoys extremely favorable financial and credit standing in the business and banking community, and stands ready, willing and able to exert its utmost efforts to exploit Coors sales in the same highly profitable manner as has been enjoyed by each such assignee and the subject brewery as to each of the other brands of beer distributed by such assignee. Indeed, the record indicates that the Adolph Coors Company itself has found each of such proposed assignees to be entirely acceptable to it as a Coors distributor. Furthermore, the Adolph Coors Company has not challenged the amount of the consideration proposed for any of such assignments in this case.

Why, then, has the Adolph Coors Company objected to the proposed court approval of such assignments? The objections of the Adolph Coors Company appear to the court to be threefold:

## I

The Adolph Coors Company argues that the omission of certain counties in the vicinity of Greenwood, Mississippi, will leave unserved a substantial portion of the Northwest Mississippi market. On the other hand, there is evidence to the effect that if these assignments are not approved by the court, and if this chapter 11 case is converted to a chapter 7 liquidation case, the Adolph Coors Company may withdraw its product from the entire geographic area constituting North Mississippi. The brewery cannot have it both ways. Its argument as to diminution of trade territory is not a convincing one where there is a potential for withdrawing from an even wider market. The court concludes that the continued servicing of the Greenwood area by the debtor-in-possession is a reasonable quid pro quo for the immediate assignment of that particular area to another assignee.

## II

The Adolph Coors Company argues that the debtor-in-possession has not shown by evidence that it will make a prompt cure of the delinquency to the Adolph Coors Company. The pertinent controlling statute is 11 U.S.C. section 365(a) and (b)(1), which provides as follows:

"(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease."

In each of the proposed assignments the full consideration is scheduled to be paid by the purchaser-assignee to the debtor-in-possession-assignor within three years. The evidence shows that all of said funds received by the debtor-in-possession-assignor are proposed to be paid first to the Adolph Coors Company in order to cure the aforementioned default. In short the issue as to prompt cure devolves on the question of whether or not, under the totality of circumstances in this case, a cure effectuated within three years would be prompt within the meaning of the statute. This court regards as persuasive on this point the legal principles recited as dicta in the case of *In re Berkshire Chemical Haulers, Inc.,* Volume 6 Collier Bankruptcy Cases, 2d Series 843 at page 847; 20 B.R. 454, 457 at page 458; 9 B.C.D. 230 at page 232, decided by the Bankruptcy Court for the District for Massachusetts on May 28, 1982. The opinion provides, in pertinent part, as follows:

"The Bankruptcy Code speaks of a 'prompt cure,' or 'adequate assurance of a prompt cure.' In at least one case, prompt cure meant an immediate payment. *In re Lafayette Radio Electronics Corp.,* [4 C.B.C 2d 220] 9 B.R. 993 (Bkrtcy. E.D.N.Y.1981). However, what is a prompt cure can often vary according to the circumstances of a given case. I therefore would disagree with the holding of *General Motors Acceptance Corp. vs. Lawrence,* 11 B.R. 44, 45 (Bkrtcy.N.D. Ga.1981), where the Court felt it unlikely that a period of time in excess of one year would ever be considered a 'prompt cure.' For instance, a debtor with 90 years remaining on a 99 year lease, who proposes to cure its arrearage by monthly payments over an 18 month period, might be found to have offered adequate assurance of a *prompt cure.* On the other hand, where in this case the debtor's offer to cure its lease default over the next 18 months contemplates the final payment being made contemporaneously with the expiration of the lease term, I cannot say that any Court, under any circumstances, would find that such a proposal qualifies as a 'prompt' cure under section 365(b)(1)."

In keeping with the rationale of the Bankruptcy Court in *Berkshire,* and buttressed by the additional circumstance that each proposed assignee in the case sub judice enjoys an earned reputation of outstanding financial strength and integrity, there are reasonable prospects that the distributorship rights, if so assigned, may well result in a long range business enterprise mutually profitable to each such assignee and to the Adolph Coors Company. So measured, particularly in view of the many years of successful operation of each proposed assignee's business enterprise up to this time, the curing of the default within a period of three years may well be a comparatively short period of time as it relates to the prospective longevity of successful business operation. Additionally, this court has a duty to apply equitable principles in such matters. The aforementioned exaction of unlawful and preferential pre-petition indebtedness payments from debtor-in-possession has prevented a greater reduction in the unpaid indebtedness, as would be the case if debtor-in-possession had been in a more viable cash flow position since the commencement of this chapter 11 proceeding. The Adolph Coors Company has not come into this court with clean hands as is required in a court of equity. Its actions have forced debtor-in-possession to take longer to cure.

In the context of this case, this court concludes that the proposed cure of the default within a period of three years meets the statutory requirement of a "prompt cure" or "adequate assurance of a prompt cure".

In the opinion of the court, no further justiciable issues were developed under 11 U.S.C. section 365(a) or under 11 U.S.C. section 365(b)(1).

### III

■ The Adolph Coors Company contends that the provision requiring approval

of the new owner in writing by the Adolph Coors Company, supra, confers on the Adolph Coors Company the absolute right, in its discretion, to disapprove the proposed assignments herein. The Adolph Coors Company contends that this court is powerless to negate the provisions of said distributorship agreement conferring such absolute power on the Adolph Coors Company.

11 U.S.C. section 365(f)(3) reads as follows:

"Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee."

That statutory provision was construed in the case of *In re Pioneer Ford Sales, Inc.,* 26 B.R. 116 (Bkrtcy.R.I., 1983), rendered by the United States Bankruptcy Court for the District of Rhode Island, to confer on the Bankruptcy Court the power to permit an assignment of an automobile dealership franchise notwithstanding the objection of the franchisor under language in the franchise agreement similar to the aforementioned restrictive language found in the Coors distributorship agreement.

It appears unquestionable that the Bankruptcy Court has such power to negate such a restriction under 11 U.S.C. section 365(f)(3).

There appears to be no serious argument by the Adolph Coors Company that the operation of each distributorship by the proposed assignees thereof will not provide adequate assurance of future performance within the meaning of 11 U.S.C. section 365(f)(2), which reads as follows:

"(2) The trustee may assign an executory contract or unexpired lease of the debtor only if—

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease."

Accordingly, this court is of the opinion that debtor-in-possession has sustained its burden of proof as to the subject consolidated motions and that debtor-in-possession is entitled to the relief sought by said motions. An appropriate order will be entered.