**In re Stanford Raye HOWE, d/b/a Mangy Moose Saloon and Powder House Lodge, Debtor.**

Bankruptcy No. 586–00113.

United States Bankruptcy Court, D. South Dakota.

Sept. 28, 1987.

John M. Fousek, Fousek, Lefholz & Mairose, Rapid City, S.D., for debtor Stanford Raye Howe, d/b/a Mangy Moose Saloon and Powder House Lodge.

Michael M. Hickey, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, S.D., for Powder House Lodge, Ltd.

PEDER K. ECKER, Bankruptcy Judge.

## INTRODUCTION

This matter is before the Court on the motion of the debtor to permit assignment of all the debtor's interest in a contract for deed with Powder House Lodge, Ltd. The contract for deed states that the vendor-seller (Powder House Lodge, Ltd.) will consent to an assignment of the contract for deed, provided the vendee-purchaser (debtor) pays an assumption fee of four percent of the remaining outstanding balance due

on the contract. The debtor contends that 11 U.S.C. § 365(f) precludes enforcement of this contractual provision, when the contract is assumed and subsequently assigned under bankruptcy law. On the other hand, Powder House Lodge, Ltd., asserts that it is entitled to receive the full benefit of its bargain, including the four percent fee. An expedited hearing on the motion for approval of the assignment was held in Rapid City, South Dakota, on August 26, 1987. The material facts are as follows.

## BACKGROUND

The debtor filed for relief under Chapter 11 of the Bankruptcy Code on May 27, 1986. He owns a restaurant and motel business known as the Powder House Lodge, in Keystone, South Dakota. The real estate and certain personal property of this business were purchased in 1984 on a contract for deed from Powder House Lodge, Ltd.

The debtor has assumed the contract for deed pursuant to 11 U.S.C. § 365(b)(1).[1] On August 21, 1986, this Court entered an order instructing the debtor to pay approximately $26,500 as "adequate protection" to Powder House Lodge, Ltd., and to cure all defaults under the contract at the time of the confirmation of the debtor's plan of reorganization.

Presently, the debtor has a willing assignee of the contract for deed. Paragraph VI of the contract for deed provides:

> The Buyer agrees not to assign this Agreement, or sell, convey, lease, assign, mortgage, transfer possession, or otherwise dispose of any interest in the property described in Part III hereof, either

in whole or in part, to any other person, firm or corporation without the express written consent of the Seller. No consent hereunder shall be granted for the first two seasons of operation following the execution of this Agreement. Thereafter, Seller will consent to an assignment of this Agreement or a transfer of the property discribed [sic] in Part III hereof either in whole or in part, provided Buyer pays an assumption fee of four percent (4%) of the then remaining outstanding balance due under this Agreement. Payment of this assumption fee shall not be credited as a payment or prepayment under this Agreement but instead is a separate fee....

At the August 26, 1987, hearing, Powder House Lodge did not argue that the assignees were financially unacceptable.[2] Thus, adequate assurance of future performance is not at issue.

## PARTIAL VACATION OF THE COURT'S AUGUST 21, 1986, ORDER

At the hearing on the debtor's motion to assign the contract for deed, Powder House Lodge, Ltd., first objected to the assignment of the contract on the grounds the Court lacked jurisdiction to consider the motion. In the Court's order of August 21, 1986, the Court approved the oral stipulation of the parties for the debtor's assumption of the contract. That order purported to relinquish this Court's jurisdiction over the contract rights and obligations between the parties. At the August, 1987, hearing, this Court excised that portion of the agreement as contrary to public policy.

---

**1.** In South Dakota, a contract for deed for the purchase of real estate is an executory contract and must be assumed or rejected by a debtor according to the requirements of the Bankruptcy Code. *In re Speck,* 50 B.R. 307 (Bankr.D.S.D. 1985), *aff'd,* 62 B.R. 61 (D.S.D.1985), *aff'd,* 798 F.2d 279 (8th Cir.1986).

**2.** In its objection to the debtor's motion to assign the contract, Powder House Lodge, Ltd., failed to contest the motion on the grounds of lack of adequate assurance of future performance. A review of the August 26 hearing tran-

script also revealed that the Court specifically raised the issue of adequate assurance of future performance, and Powder House Lodge, Ltd., did not question the potential assignees' ability to perform under the contract. The assignees were identified as owners of a successful local business, who had or would provide financial statements to Powder House Lodge, Ltd.'s, attorney. Thus, Powder House Lodge, Ltd., cannot argue, after the hearing, that it was not provided with evidence of the assignees' ability to perform under the contract.

■ Powder House Lodge, Ltd., now asks that the Court reconsider this partial abrogation, or, in the alternative, rescind the entire agreement. It should be noted that this Court almost invariably enforces all stipulations voluntarily entered into between the parties. In this situation, however, a bankruptcy debtor has contracted away the most substantial right granted to him under the Bankruptcy Code: this Court's power to hear core and non-core proceedings involving the debtor. *See* 28 U.S.C. § 157. The Court must strictly scrutinize such an agreement.

■ Parties by agreement cannot oust a court of jurisdiction, unless such an agreement is not unreasonable in the setting of the particular case. *Himes v. Admiral Ins. Co.*, 575 F.Supp. 312, 313 (E.D.Ky. 1983), *quoting William H. Muller & Co. v. Swedish American Line Ltd.*, 224 F.2d 806, 808 (2d Cir.1955), *cert. denied*, 350 U.S. 903, 76 S.Ct. 182, 100 L.Ed. 793 (1955), *overruled on other grounds, Indussa Corp. v. S.S. Ranborg*, 377 F.2d 200 (2d Cir.1967); *cf. Solomon v. Solomon*, 516 F.2d 1018, 1027 n. 22 (3d Cir.1975) ("contractual ageements to limit the jurisdiction of courts are not effective to deprive any court of jurisdiction which it would otherwise have unless the provision is justice-promoting, represents a fair compromise after the dispute has arisen, or is tailored to the convenience of the parties"). Therefore, this Court must look at the totality of the circumstances surrounding the agreement that purports to deprive this Court of its jurisdiction.

■ This Court finds that the agreement was unreasonable, in light of all the facts of this case. At the time the agreement was entered into between the parties, the debtor had just begun his reorganization process. He had invoked the jurisdiction of the Bankruptcy Court to obtain the "breathing spell" from the collection efforts of his creditors. It was contrary to the purpose of the Bankruptcy Code to "throw away" the protection of the court in his dealings with creditor Powder House

Lodge, Ltd., so early in the reorganization proceedings.

In addition, the debtor's bargaining power with all creditors was particularly low only three months after filing his Chapter 11 petition. The debtor needed this executory contract to stay in business and was particularly vulnerable at that time. Thus, the Court refuses to reconsider its partial vacation of the order entered August 21, 1986, and refuses to rescind the entire agreement.

At the August 26, 1987, hearing, Powder House Lodge, Ltd., then objected to the assignment of the contract for deed, unless the debtor paid the four percent assumption fee. The Court approved the assignment, reserving the following issue.

## ISSUE

Whether 11 U.S.C. § 365(f)(1) precludes enforcement of the four percent assumption fee provision in the contract for deed, when adequate assurance of future performance is not at issue.

## LAW

■ This Court holds that the debtor is not required to pay the four percent assumption fee when this provision of the contract directly conditions the assignment of the contract by the debtor in violation of 11 U.S.C. § 365(f)(1). This holding reflects the clear Congressional policy favoring the assumption and assignment of contracts as a means of assisting the debtor in its rehabilitation or liquidation effort. Also, Powder House Lodge, Ltd., will be protected by the statutory requirement of adequate assurance of future performance in Section 365(f)(2). This holding is based on the following discussion.

11 U.S.C. § 365(a) authorizes the trustee, or the debtor-in-possession, to assume or reject any executory contract of the debtor.[3] The assumption or rejection of the

---

3. The debtor-in-possession has all the rights and powers of a Chapter 11 trustee. 11 U.S.C. § 1107(a); *see also In re Hogg*, 76 B.R. 735 (Bankr.D.S.D.1987).

contract is subject to the court's approval.[4] If the contract is in default, the default must either be cured or adequate assurance be provided of its cure before the contract may be assumed; the other contracting party must be compensated for any pecuniary loss occasioned by such default; and the debtor must provide "adequate assurance of future performance under such contract...." 11 U.S.C. § 365(b)(1).

If the debtor-in-possession assigns the executory contract after its assumption, Section 365(f) governs the assignment:

(f)(1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.

(2) The trustee may assign an executory contract or unexpired lease of the debtor only if—

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

(3) Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease

or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee.

Subsection (1) allows assignment of the executory contract in spite of a clause in the contract that would directly bar the assignment of the contract—by either prohibiting, restricting, or conditioning the assignment itself. Subsection (2) then imposes two conditions on the assignment of the contract by the debtor: the debtor first must assume the contract, subject to all the restrictions on assumption found in Section 365, and the non-debtor contracting party must be provided with adequate assurance that the assignee will complete the obligations due under the contract. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 59, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5845 (hereinafter "Senate Report"); H.R.Rep. No. 595, 95th Cong., 1st Sess. 349, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6304–05 (hereinafter "House Report"). Subsection (3) goes beyond the scope of Subsection (1) and prohibits enforcement of any clause in the contract creating a right to modification or termination because of the assumption or assignment of such contract, thereby indirectly barring an assignment by the debtor. *See In re J.F. Hink & Son*, 815 F.2d 1314, 1317–18 (9th Cir.1987);[5] *In re Sapolin Paints, Inc.*, 20 B.R. 497, 509 (Bankr.E.D. N.Y.1982). The essence of Subsections (1) and (3) is that all contractual provisions,

---

**4.** 11 U.S.C. § 365(a) provides: "Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

**5.** *In re J.F. Hink & Son* provides an excellent illustration of a lease provision which "modifies" an obligation on account of an assignment. The debtor was the lessee of a multi-story parking garage adjacent to the debtor's department store. *Id.* at 1315. The lease was described as a "sweetheart lease," negotiated between family members. The existing rental amount was ex-

traordinarily favorable to the debtor. *Id.* The lease, however, provided that if the lease was ever assigned, the rental amount would be renegotiated to reflect the then commercially reasonable amount. *Id.* The Ninth Circuit Court of Appeals held that Section 365(f)(3) would govern in the absence of other circumstances, but that the potential assignee had waived his right to nullify this "renegotiation" provision. He had failed to bring 11 U.S.C. § 365(f)(3) to the attention of the bankruptcy court and had acquiesced in that court's order that the assignment would be subject to all terms and conditions in the lease. *Id.* at 1318.

not merely those entitled "anti-assignment clauses," are subject to the court's scrutiny regarding their anti-assignment effect. *Matter of U.L. Radio Corp.*, 19 B.R. 537, 543 (Bankr.S.D.N.Y.1982). Therefore, the bankruptcy court will render unenforceable any provision whose sole effect is to restrict assignment. *Id.*

Viewing the statute as a whole, Section 365 reflects the clear Congressional policy favoring assumption and assignment of executory contracts and leases. *See In re Evelyn Byrnes, Inc.*, 32 B.R. 825, 829 (Bankr.S.D.N.Y.1983); *Matter of Haffner's 5 Cent to $1.00 Stores, Inc.*, 26 B.R. 948, 951 (Bankr.N.D.Ind.1983); *Matter of U.L. Radio Corp.*, 19 B.R. at 544. The assumption and assignment of contracts and leases provide the debtor with "a means of continuing performance and realizing value and thereby assisting the debtor in its rehabilitation or liquidation." *In re Evelyn Byrnes*, 32 B.R. at 829; *see also Haffner's*, 26 B.R. at 949–50 (quoting Simpson, *Leases and the Bankruptcy Code*, 38 Bus.Law. 60, 60 (1982)). To further the express Congressional policy, it may be necessary to compromise private rights which conflict with the debtor's ability to receive the full benefit of a reorganization or liquidation proceeding. *In re Vista VI, Inc.*, 35 B.R. 564, 567 (Bankr.N.D.Ohio 1983); *Matter of Libson Shops, Inc.*, 24 B.R. 693, 695 (Bankr.E.D.Mo.1982). In the event of an "assignment under the compulsion of Section 365(f)," the non-debtor contracting party is given new rights, but other rights are taken away. *In re Sapolin Paints, Inc.*, 20 B.R. at 509. He is given assurance of future performance by the assignee, but is deprived of the right to demand strict enforcement of any contractual clauses limiting assignment, directly or indirectly. *Id.* The goal of Section 365(f) is to enlarge the

debtor's ability to assign a lease or executory contract, while the other contracting party maintains the "benefit of the bargain," thus creating a careful balance between the rights of the parties.[6] *Cf.* Senate Report at 59, *reprinted in* 1978 U.S. Code Cong. & Admin.News at 5845; House Report at 348, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 6304 ("[I]f the trustee is to assume a contract or lease, the courts will have to insure that the trustee's performance under the contract or lease gives the other contracting party the full benefit of his bargain.").

In the present case, the contract for deed states that the vendor-seller will consent to assignment, provided the vendee-purchaser pays a four percent assumption fee on the remaining balance. The assumption fee would be approximately $20,000. It is clear from the language of the contract that Powder House Lodge, Ltd.'s, consent to assignment is directly conditioned on its receipt of the four percent assumption fee. This clause could directly bar the assignment by the debtor. In addition, payment of this exorbitant fee would severely hamper the debtor's rehabilitation effort. *See* Simpson, *Leases and the Bankruptcy Code*, 56 Am.Bankr.L.J. 233, 238 (1982). Therefore, Section 365(f)(1) governs this matter and precludes enforcement of the four percent assumption fee requirement in the contract for deed.

It is apparent that the four percent assumption fee was intended to protect the vendor from the possible financial inadequacy of a prospective assignee.[7] These "liquidated damages" are intended to cover any costs incurred by the vendor in the event of default by the assignee. Under the Bankruptcy Code, however, Powder

---

**6.** Adequate assurance of future performance should be seen as a substitute for compelling strict and literal compliance with each and every term of a contract or lease. Simpson, *Leases and the Bankruptcy Code*, 38 Bus.Law. at 75 (1982).

**7.** The four percent fee also may be viewed as an attempt by the vendor to extract any profit realized upon the assignment of the contract. *See In re National Sugar Refining Co.*, 21 B.R.

196 (Bankr.S.D.N.Y.1982). Such a purpose would frustrate the Congressional policy of assisting the debtor in realizing the equity in all his or her assets. *See Haffner's*, 26 B.R. at 949, quoting Simpson, *Leases and the Bankruptcy Code*, 38 Bus.Law. at 61. In fact, the attempt by the vendor to obtain the profit from an assignment would result in a windfall to the vendor, in disaccord with the "benefit of the bargain" admonition of Congress.

House Lodge, Ltd., is statutorily provided with adequate assurance of future performance by the assignee, in exchange for the forced assignment of its contract. *See* 11 U.S.C. § 365(f)(2)(B). Thus, the four percent assumption fee is superfluous, when the vendee assigns the contract pursuant to bankruptcy law.[8]

Powder House Lodge, Ltd., argues that the four percent assumption fee is not a prohibition, restriction, or condition within the spirit and meaning of Section 365(f), and cites *In re Pin Oaks Apartments,* 7 B.R. 364 (Bankr.S.D.Tex.1980), to support its argument. *Pin Oaks* concerned a trustee who sought to sublease an apartment complex, despite a provision in the lease prohibiting such subletting. *Id.* at 368. The *Pin Oaks* court refused to radically rewrite the lease to permit subletting. It stated: "If Congress intended to give this Court or the trustee the power to abrogate any contractual rights between a debtor and a non-debtor contracting party other than anti-assignment and 'ipso facto' clauses, it would have expressly done so." *Id.* at 367.

The facts of *In re Pin Oaks* are easily distinguishable from the present circumstances. As the *Pin Oaks* court pointed out, Section 365 permits the debtor to assign a lease, notwithstanding any contrary contractual provisions which restrict, prohibit, or condition any such assignment. *Id.* at 367. In contrast, nowhere does the Bankruptcy Code permit subleasing, whether or not the lease contains a prohibition against subleasing. *Id.* at 368. The "no-subleasing" provision in the *Pin Oaks* lease was not a direct or indirect condition on the assignment of that lease. In fact, the case did not even involve the assignment of a lease. Thus, the facts of *Pin Oaks* bear no relationship to the present case.

 In addition, the *Pin Oaks* court reached the correct holding, but with a

very narrow construction of Section 365(f). *See In re Evelyn Byrnes,* 32 B.R. at 830; *Matter of U.L. Radio Corp.,* 19 B.R. at 543; *see also* Simpson, *Leases and the Bankruptcy Code,* 56 Am.Bankr.L.J. at 249. Such a narrow view of this statute contradicts the express Congressional policies favoring assumption and assignment of executory contracts and leases, and assisting the debtor in its reorganization and rehabilitation efforts. *Matter of U.L. Radio Corp.,* 19 B.R. at 543. Any lease provision whose sole effect is to restrict assignment in any way, not merely a provision which flatly refuses assignment, is subject to negation under Section 365(f). *See id.* On the other hand, this Court believes that Sections 365(f)(1) and (f)(3) do not allow the debtor to abrogate any contractual provision, but only those that directly or indirectly affect the assignment of an executory contract or lease in the bankruptcy reorganization process, by prohibiting, restricting, or conditioning that assignment, or terminating or modifying an obligation under the contract or lease, in the event of an assignment. *See* Simpson, *Leases and the Bankruptcy Code,* 56 Am.Bankr.L.J. at 244 (courts do not have "carte blanche" to rewrite leases).

Thus, this Court holds that the debtor is not required to pay the four percent assumption fee, as this fee directly conditions the assignment of the contract for deed, in contravention of Section 365(f)(1).

Accordingly, the above and foregoing hereby constitutes the Court's Findings of Fact and Conclusions of Law in the above-entitled matter pursuant to Bankr.R.P. 7052 and 9014 and Fed.R.Civ.P. 52. Counsel for the debtor is directed to submit an appropriate order in accordance with Bankr.R.P. 9021.

---

8. The four percent assumption fee provision is similar to the contractual provision held to be unenforceable pursuant to Section 365(f)(3) in *In re Coors of Northern Mississippi, Inc.,* 27 B.R. 918 (Bankr.N.D.Miss.1983). Adolph Coors Company reserved the right to disapprove of any prospective buyer of the debtor's beer distributorship, if such a buyer did not have a reasonable opportunity to make a financial success of the distributorship. *Id.* at 920. Such a provision was unnecessary in light of the Section 365(f)(2) requirement that proposed assignees provide adequate assurance of future performance. *Id.* at 923.