**In re The NATIONAL SUGAR REFINING COMPANY, Debtor.**

**Bankruptcy No. 81 B 11756 (EJR).**

United States Bankruptcy Court,
S. D. New York.

June 22, 1982.

Shea & Gould, New York City, for JKC Realty, Inc.

Finley, Kumble, Wagner, Heine, Underberg & Casey, New York City, for debtor.

Moses & Singer, New York City, for Bankers Trust Co.

Anderson, Russell, Kill & Olick, New York City, for Creditors' Committee.

## DECISION ON MOTION TO ASSUME LEASE

EDWARD J. RYAN, Bankruptcy Judge.

The National Sugar Refining Company ("National") filed a petition under Chapter 11 of the United States Bankruptcy Code on September 3, 1981 and, pursuant to 11 U.S.C. § 1108, was continued in possession of its property and in operation of its business.

JKC Realty, Inc. ("JKC") is the successor landlord under a lease dated October 25, 1978, between Massachusetts Mutual Life Insurance Company, as landlord, and The National Sugar Refining Company, as tenant (the "Lease") with respect to the rental of a portion of the thirty-second (32d) floor of The Chrysler Building East, 666 Third Avenue, New York, New York 10017, for a term commencing on July 1, 1979 and ending on June 30, 1989.

The Lease provides for a fixed rental during the period July 1, 1979 through June 30, 1984 in the annual amount of $43,627.50, and an annual rental of $46,777.50 during the period July 1, 1984 through June 30, 1989. Additional rent includes such items as tax escalation adjustments, labor escalation adjustments, and electric charge adjustments.

As of March 11, 1982, in excess of $30,000 in arrearages was due under the terms of the Lease.

On December 28, 1981, National, pursuant to an order of this court entered upon the application of JKC, moved for an order authorizing it to assume the Lease. National's motion is based on its belief that while it has no need for the premises, the profit realized upon the assignment of the Lease to a third party will inure to the benefit of National's estate. JKC, however, has taken the position that, pursuant to Article 36 of the Lease, it is entitled to any profit realized upon the assignment.

Although the pervading theme of the Bankruptcy Code is to remove the court from the day to day operations of a reorganizing debtor, there are certain transactions into which the court is specifically directed to participate.

Section 365(a) of the Bankruptcy Code provides that a debtor in possession *"subject to the court's approval,* may assume or reject any ... unexpired lease of the debtor."* (emphasis added). The Bankruptcy Code and its legislative history list no criteria for the courts to apply in determining whether the decision of a debtor in possession to assume or reject an unexpired lease should be approved. Thus, standards applied by the courts under Section 70(b) of the Bankruptcy Act of 1898, the predecessor to Section 365 of the Bankruptcy Code, continue to be applied by the courts under the Code. See, 2 *Colliers on Bankruptcy,* § 365.03 (15th ed. 1981).

Under the Bankruptcy Act, a majority of the courts applied the "business judgment" test to determine whether a trustee should be permitted to assume or reject an executory lease. *See, e.g., Group of Institutional Investors v. Chicago, Mil., St. P. & Pac. R. R. Co.,* 318 U.S. 523, 63 S.Ct. 727, 87 L.Ed. 959 (1943); *In re Minges,* 602 F.2d 38,

42 (2d Cir. 1979) (and cases cited therein). Simply stated, "the question whether a lease should be rejected and, if not, on what terms it should be assumed is one of business judgment." *Group of Institutional Investors v. Chicago, Mil., St. P. & Pac. R. R. Co., supra,* 318 U.S. at 550, 63 S.Ct. at 742. It is the court's duty to apply the "business judgment" test after the trustee has presented the court with the facts. *King v. Baer,* 482 F.2d 552, 557–8 (10th Cir. 1973); *Matter of Tilco, Inc.,* 558 F.2d 1369–73 (10th Cir. 1977).

Clearly, if National is entitled to the proceeds of an assignment of the Lease, an assumption of the Lease followed by an assignment would be a sound exercise of good business judgment. If JKC is entitled to the proceeds of the assignment, however, assumption and assignment would be a poor exercise of business judgment.

Thus, in order to determine whether assumption of the Lease by National meets the business judgment test, this court must first determine which party is entitled to the proceeds of an assignment of the Lease.

This court, as a court of equity, finds that it can at this time decide the contract interpretation issue since it bears so directly on the business judgment determination, which determination must be made with respect to a § 365(a) motion to assume.

The court, with the consent of counsel for JKC, adjourned the December 28, 1981 hearing to January 25, 1982, to give the parties an opportunity to present evidence and submit legal memoranda on the interpretation of Article 36 of the Lease and the question of whether it would be a prudent exercise of business judgment for National to assume the Lease.

At the January 25, 1982 hearing, the testimony of Harry Letzler, a former officer and present consultant of National; Hilton H. Stothers, Esq., an associate with Chadbourne, Parke, Whiteside & Wolff, a law firm which represented National in connection with the negotiation of the Lease; and Jack Coyne, Vice President of Bankers Trust Company (the "Bank"), was offered in support of National's motion to assume.

JKC offered no evidence in opposition thereto.

■ According to the testimony, the Lease was drafted by the attorney for Massachusetts Mutual Life Insurance Co., the original lessor under the Lease. The restrictions and conditions on National's ability to assign the lease contained in Article 36 of the Lease were left substantially unchanged throughout the various drafts of the Lease. As this court stated in *In re City Stores, Inc.* 9 B.R. 717, 721 (Bkrtcy.S. D.N.Y.1981), "The rule of strict construction, contra proferentem, requires that a contract be construed against the person preparing the terms thereof." The lease was prepared by the attorney for the landlord and so, in this dispute over Section 36 of the Lease, that section must be construed against the landlord.

■ The clear language of Section 36.01 of the Lease prohibits National from assigning the Lease without JKC's consent. Section 36.02 of the Lease, which applies only to consensual assignment, provides that as a condition precedent to obtaining JKC's consent to an assignment, National must offer to surrender the premises to JKC. If National's offer to surrender is refused by JKC, in order to obtain JKC's consent to an assignment, National must comply with certain specific conditions set forth in Section 36.03. Section 36.03 provides that as part of the price of its consent to an assignment, JKC has the right to request the profits realized by National upon an assignment.

JKC must be held to the exact language of Section 36. The language is not ambiguous and, even if it were, the uncontroverted testimony adduced at the January 25, 1982 hearing resolved any alternative interpretations to Section 36 in favor of National. The language of Section 36 applies only to a consensual assignment and gives JKC no right to the profits of an assignment of the Lease made pursuant to the bankruptcy law. JKC has no right to the profits of an

assignment by National as debtor in possession [1] pursuant to 11 U.S.C. § 365(f).

The additional uncontroverted facts [2] presented to this court at the evidentiary hearing on January 25, 1982, are sufficient for this court to apply the business judgment test to determine that it is in the best interests of the debtor in possession to assume the Lease.

■ However, since there has been a default in the Lease by National, the debtor in possession cannot assume the Lease unless it satisfies the requirements of 11 U.S.C. § 365(b) by curing the default, compensating JKC for any loss resulting from the default and providing to JKC adequate assurance of future performance.

On December 18, 1981, National, its creditors' committee and the Bank entered into a stipulation (the "Stipulation") which provides, inter alia, that the Bank will transfer to JKC on behalf of National, an amount sufficient to cure existing defaults under the Lease and that the Bank will undertake whatever action is necessary and appropriate to afford National a means of providing adequate assurance of future performance to JKC until the Lease is properly assigned by National pursuant to 11 U.S.C. § 365(f). Since no pecuniary loss resulting from National's default has been alleged by JKC, the statutory requirements of Section 365(b) of the Code can be fulfilled according to the terms of the Stipulation.

■ In conclusion, National is authorized to immediately assume the Lease [3]; National as lessee is entitled to any proceeds realized upon an assignment of the Lease made pursuant to 11 U.S.C. § 365(f); the Stipulation between National, the Bank and the creditors' committee dated December 18, 1981, is hereby approved [4] and National is authorized, empowered and directed to enter into and to take all action necessary to effectuate, consummate and perform the terms and conditions of the Stipulation.

Settle an appropriate order.

---

1. National as debtor in possession is a distinct entity from National, the pre-petition debtor.

2. The facts presented at the hearing established, inter alia, that: (1) the rental under the Lease is currently between $17 and $18 per square foot per year; (2) National has no use for the premises; (3) a third party has offered to purchase National's interest in the Lease at a price equal to $29 per square foot per year; (4) National's interest in the Lease has an approximate value of $300,000 over the remaining years of the Lease.

3. While the within matter was sub judice, JKC filed a Notice of Motion dated March 12, 1982, requiring National to pay all post-petition obligations due and owing to JKC under the terms of the Lease. The motion was heard on March 22, 1982, at which time the matter was marked submitted. Since National has been directed to assume the Lease immediately and since proper assumption requires a curing of all defaults, JKC's motion will be mooted as of the date of compliance with the decision. Pending compliance, the matter is marked off without prejudice to be restored should the debtor fail to assume and cure all defaults pursuant to 11 U.S.C. § 365(b) within seven (7) days from the date of this decision.

4. The Stipulation is being "So Ordered" contemporaneously with this decision.