815 F.2d 1314
 Bankr. L. Rep. P 71,785
In re J.F. HINK & SON, Debtor,
Moshe Eli CUKIERMAN, Appellant,
v.
MECHANICS BANK OF RICHMOND, Trustee of the Lester W. Hink
Trust; J.F. Hink & Son, Appellee.
 No. 86-2304.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 13, 1987.
Decided April 29, 1987.
 
 Kevin M. Fong, San Francisco, Cal., for appellant.
 Howard W. Wayne, Berkeley, Cal., for appellee.
 Appeal from a Decision of the Bankruptcy Appellate Panel.
 Before MERRILL, and NOONAN, Circuit Judges, and WATERS, District judge*.
 NOONAN, Circuit Judge:
 
 
 1
 Moshe Eli Cukierman (Cukierman) appeals from a decision of the Bankruptcy Appellate Panel affirming an order of the Bankruptcy Court in favor of Mechanics Bank of Richmond as Trustee of the Lester W. Hink Trust (the Trustee) and J.F. Hink & Son (Hink's). We affirm the judgment appealed from.
 
 BACKGROUND
 
 2
 Hink's was a department store that had operated for over a century in Berkeley, California. For much of its existence it was managed by Lester W. Hink, the son of the founder. On July 19, 1974 Hink's entered into a lease of an adjacent multi-story garage owned by Lester W. Hink, who ultimately assigned his interest to the Trustee.
 
 
 3
 Lester W. Hink died in 1977 and within a few days of his death, Hink's filed under Chapter 11 of the Bankruptcy Act. During the reorganization, its stock was acquired by the Dunlap Company. This company defaulted on its obligations and Hink's again filed under Chapter 11. Cukierman acquired the building in which the department store had existed and became the landlord of that building. Two leases remained: the lease of the building and the lease of the garage; of both the debtor was the lessee.
 
 PROCEEDINGS
 
 4
 On June 5, 1985 Hink's, as debtor in possession, filed motions to obtain court approval to assume both the lease of the garage and the lease of the building and to make assignments of them. On July 13, 1985 the Bankruptcy Court held a hearing on the debtor's motions. Cukierman was present, represented by the same counsel as have prosecuted this appeal. Soon after the hearing had begun, he presented an alternative proposal by which he would become the assignee of both the lease of the department store building and the lease of the garage. The court recessed the hearing to permit his proposal to be discussed between counsel for Cukierman and counsel for Hink's. At the conclusion of their colloquy counsel for Hink's asked the court to let it accept Cukierman's offer.
 
 
 5
 Cukierman's offer, as presented to the Bankruptcy Court by his counsel, Edward Weiner, was to purchase the department store lease for $145,000 in cash and to pay $7,000 a month for the term of the parking lease through December 31, 1986. All parties recognized that the garage lease was an asset of great value and that the existing rent was extraordinarily favorable to the lessee. Counsel for the Trustee described it as "a sweetheart lease" and this expression was used by the court to characterize it. It was a sweetheart lease because it had been negotiated between family members. Paragraph 24 of the lease, however, contemplated the situation where a member of the family would no longer be the lessee and it would be desirable to have the rent set in reasonable commercial terms. Paragraph 24 of the garage lease provided:
 
 
 6
 Any provision to the contrary notwithstanding, Lessee may assign this lease to any successor of its business, providing that such successor continues to operate a department store business at 2224 Shattuck Avenue, Berkeley, California; provided, further, that in the event of such assignment, the option to renew this lease hereinabove granted shall not be available to the assignee of this lease, without the express consent of Lessor first having been obtained; however, the consent of Lessor shall not be unreasonably withheld. Provided, further, that if this lease is sought to be assigned, the amount of rental shall be renegotiated to reflect the then commercially reasonable amount, and if the parties cannot agree on the rent, that issue shall be referred for arbitration under rules of the American Arbitration Association.
 
 
 7
 Cukierman was examined by counsel for Hink's, counsel for the Trustee and his own counsel as to the particular terms of his offer and his financial ability to make the payments he might be asked to make under the offer. In the course of this examination Howard W. Wayne, representing the Trustee, asked Cukierman:
 
 
 8
 Q: Regardless of what amount you or the bank might consider the proper rent, do you acknowledge that the provision of Paragraph 24 requires a new setting of rent schedule for the garage?
 
 
 9
 A: I am aware.
 
 
 10
 Q: And you have acknowledged that that is so?
 
 
 11
 A: I acknowledge.
 
 
 12
 Q: And that is in addition to the $7,000 per month that you proposed to pay to the Debtor?
 
 
 13
 A: Correct.
 
 
 14
 The Trustee continued to object to Cukierman's proposal, and its counsel observed that parking had "become very, very tight in downtown Berkeley. This garage has very substantial value." The court responded, "Of course you are going to realize some of that value because you have a right to renegotiate the rent." Later in the hearing, the court observed to all parties that there had to be "adequate assurances that Mr. Cukierman has the capacity to pay the rent." Immediately after this observation, the court declared:
 
 
 15
 Whatever the rent is under the parking lot lease, which at this point is about $4,200 a month, it may be increased and either renegotiated or the restructuring of rents in accordance with the lease which allows an increase of the lease rent based upon the market value of the parking lot property.
 
 
 16
 I don't have any idea what the potential increase would be that we're talking about in the rent. Whether I'm talking about two or three times since the landlord hasn't chosen to put on any evidence to the Court indicating what sort of an increase we're potentially talking about, there's no reason to believe that Mr. Cukierman doesn't have the capacity to pay the increased rents.
 
 
 17
 The court noted that Cukierman had agreed to pay Hink's $7,000 a month, but that he would have to pay in addition the current garage rent of $4,200 a month. The court stated that his $4,000,000 net worth was sufficient to assure these payments. After these observations by the court, counsel for the Trustee requested that the court order "provide that the assignee is subject to the provisions of Paragraph 24." He added, "I'd like to have it very clearly understood all parties seem to agree that the present rent will not be the future rent." The following colloquy then ensued between the court, counsel for Cukierman, and counsel for the Trustee:
 
 
 18
 THE COURT: Well, I think that's the law that the assignment is subject to all the terms of the lease.
 
 
 19
 MR. WEINER: We would have no objection to the order providing that the lease is assigned subject to all of its terms and provisions including Paragraph 24. I do object to any implication or express reference that that means the rent will be increased. What will be the lease can be enforced.
 
 
 20
 MR. WAYNE: That's satisfactory.
 
 
 21
 At the conclusion of the hearing, Mr. Weiner declared:
 
 
 22
 I have a couple of technical matters, if I may, Your Honor. I would like a finding that notice is sufficient to this case. We express some concern in our Points and Authorities regarding the fact that there was not notice to all creditors. I believe the Court can address that under Rule 2002. I would ask that you do in the order make a finding that notice is sufficient. All the major players are here.
 
 
 23
 The court responded by finding that reasonable notice had been given.
 
 
 24
 At the end of the hearing the court indicated that it would approve the debtor's assumption of the leases and their assignment to Cukierman. On July 12, 1985 the court issued such an order. The order was prepared by counsel for Cukierman. It stated:
 
 
 25
 The Department Store Lease and the Parking Lot Lease shall be assigned to Mr. Cukierman subject to all terms and conditions set forth in such leases. Without limiting the generality of the foregoing, the Parking Lot Lease shall be assigned subject to paragraph 24 thereof, which indicates that an adjustment in rent may be appropriate upon assignment, depending on applicable law and other matters relative to fair market value.
 
 SUBSEQUENT PROCEEDINGS
 
 26
 On July 19, 1985 the Trustee notified Cukierman that the commercially reasonable rent for the Garage was $301,617 a year and asked him to pay a monthly rental of $25,134.75. Eight days later the bankruptcy court's order of July 12, 1985 became final. Cukierman took no appeal from it. However, on August 22 Cukierman tendered only the old rent and refused to recognize the increase.
 
 
 27
 The Trustee then filed a motion for interpretation and enforcement of the July 12, 1985 order. After a hearing on September 27, 1985, Judge Cameron Wolfe, Bankruptcy Judge, ruled that the July 12, 1985 order "plainly states that Paragraph 24 of the lease is applicable as to Cukierman." The court held that Paragraph 24 had not been abrogated by 11 U.S.C. Sec. 365(f)(3), adding "the transcript confirms that the parties and the Judge understood that to be the case." The court, however, declined to order enforcement of the terms of Paragraph 24.
 
 
 28
 Cukierman appealed to the Bankruptcy Appellate Panel. On June 16, 1986 Judges Elliott, Meyers and Ashland ruled that "the court intended to and did make Paragraph 24 applicable to Cukierman." It noted that Cukierman had "failed to bring 11 U.S.C. Sec. 365(f)(3) to the attention of the bankruptcy court" and that he had not attacked the bankruptcy court's order by way of an appeal or a timely post-judgment motion. It ruled that the bankruptcy court's order was binding as res judicata.
 
 
 29
 Cukierman then appealed to this court. The appeal focused on the Bankruptcy Appellate Panel's "application of res judicata." Cukierman argued that "res judicata requires a full and fair opportunity to litigate" and that he had "had no such opportunity." He further maintained that he had "had no notice" "of any issues concerning the terms and conditions of the leases or Section 365(f)(3)." He maintained that the bankruptcy appellate decision barred him "from litigating an issue never raised, considered or properly noticed in the prior proceeding."
 
 ANALYSIS
 
 30
 The transcript of the hearing before the bankruptcy court makes plain beyond doubt, cavil or argument that the terms of the garage lease were well understood by Cukierman and his counsel; that with full knowledge of these terms Cukierman accepted them and his counsel stated that he would comply with them; that Cukierman's counsel drafted the order for the Bankruptcy Court by which the terms were made part of the assignment to Cukierman; and that the other parties to the proceeding and the Court itself relied on the representations of Cukierman and of his counsel that Cukierman was accepting all the terms of the lease and in particular the terms of Paragraph 24. Not the slightest uncertainty existed that Cukierman knew all the terms of the lease. Not the slightest doubt existed that he consented to these terms. Each court that has considered the matter--the original bankruptcy court; Judge Wolfe; and the Bankruptcy Appellate Panel--have agreed that he did consent. We, too, find not the slightest basis for finding anything except consent by Cukierman.
 
 
 31
 Not the slightest doubt exists that Cukierman had notice of the hearing and notice of what would be considered at the hearing. He appeared at the hearing with counsel. He initiated the proposal. If anyone had lacked notice, it would have been other creditors, not he. It was his proposition which was before the court. It was the order drafted by his counsel which the court approved on July 12, 1985. It was his counsel that suggested to the court that the order indicate that sufficient notice had been given to all interested parties.
 
 
 32
 In the present case Section 365(f)(3) provides that notwithstanding any provision in an unexpired lease, the lease or any right or obligation under it "may not be terminated or modified because of the assumption or assignment of the lease." This provision of the code would, of course, govern in the absence of other circumstances. Unlike Section 365(d), however, there is no provision in the code that Section 365(f)(3) may not be waived by those for whose benefit it has been enacted. Cukierman effectively waived his rights under the statute.
 
 
 33
 His waiver was relied on by Hink's, by the Trustee, and by the court. His waiver established the basis on which the court issued its order of July 12, 1985. Having induced reliance by the other principal parties and by the court itself, Cukierman is estopped to deny that he accepted all of the terms of Paragraph 24.
 
 
 34
 The doctrine of estoppel is so well known and so universally accepted that citation and explanation are almost unnecessary. E.g., Kierulff v. Metropolitan Stevedore Co., 315 F.2d 839 (9th Cir.1963); James v. Nelson, 90 F.2d 910 (9th Cir.), cert. denied, 302 U.S. 721, 58 S.Ct. 41, 82 L.Ed. 556 (1937). The operation of estoppel under bankruptcy law follows as a specific application of the ancient principle. See First Nat'l Bank of Portland v. Dudley, 231 F.2d 396, 402 (9th Cir.1956); In re Martin Brothers Tool Makers, 796 F.2d 1435 (11th Cir.1986); In re Sapolin Paints, Inc., 20 B.R. 497, 510 (Bankr.E.D.N.Y.1982). Estoppel functions in this fashion in bankruptcy because bankruptcy itself is an equitable proceeding in which equity operates within the terms of the bankruptcy code. See NLRB v. Bildisco & Bildisco, 465 U.S. 513, 527, 104 S.Ct. 1188, 1196, 79 L.Ed.2d 482 (1984); Bank of Marin v. England, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966).
 
 
 35
 The notion that a party in bankruptcy can be permitted to thwart a bankruptcy order which has been "conceived and fostered through its participation" has been vigorously rejected. Farmer Bros. v. Huddle Enterprises, Inc., 366 F.2d 143, 147 (9th Cir.1966). The basic reason for this vigorous rejection of such behavior and the basis for applying estoppel in such circumstances has been magisterially expressed by the Supreme Court:
 
 
 36
 The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. Dickerson v. Colgrove, 100 U.S. (10 Otto) 578, 580, 25 L.Ed. 618 (1880).
 
 
 37
 Cukierman and his counsel, by their language and conduct, led Hink's and the Trustee to acquiesce in the order of July 12, 1985 and the court to issue it. He cannot subject them to loss or injury by disappointing the expectations upon which they acted.
 
 
 38
 Paragraph 13 of the lease provides that the Lessee shall indemnify the Lessor "from all costs, charges and expenses and expenses whatever, including attorneys fees, in any action or proceeding brought by Lessor against Lessee, unless Lessee prevails fully therein." Under this provision of the lease, the Trustee is entitled to be paid the costs and attorneys fees it has incurred at every stage of this proceeding from the beginning of its motion in the bankruptcy court to clarify the July 12, 1985 order. Upon submission of a statement of costs and fees incurred to this court an order will issue directing their payment by Cukierman.
 
 
 39
 AFFIRMED.
 
 
 
 *
 Honorable Laughlin E. Waters, Senior United States District Judge for the Central District of California, sitting by designation