**In re OFFICE PRODUCTS OF AMERICA, INC., d/b/a Office Stop and Laureate Advertising Agency, Debtor.**

**Bankruptcy No. 91–51849–C.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

March 5, 1992.

---

Helen G. Schwartz, Habbeshaw, Kalmans & Schwartz, P.C., San Antonio, Tex., for Randolph Osherow, Chapter 7 Trustee.

Michael G. Colvard, Martin, Drought & Torres, Inc., San Antonio, Tex., for Eastpoint Partners, L.P.

## ORDER DENYING MOTION FOR REHEARING

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration the motion of Eastpoint Partners, L.P. for rehearing on this court's decision and order denying the motion for disbursement of sale proceeds from lease assignment. 136 B.R. 992. Upon consideration thereof, the court finds and concludes that the motion for rehearing should be DENIED.

The gravamen of the motion for rehearing is that this court's decision is based on a faulty premise, to wit, that the trustee intended to accomplish the assignment of the Eastpoint lease pursuant to § 365(f)(1), thereby obviating any need to obtain Eastpoint's consent to the assignment. Eastpoint says that, in fact, the trustee had no intent to rely on that section of the Code, and that, to the contrary, the trustee was *looking for* Eastpoint's consent, which Eastpoint in fact gave (in writing, no less). Eastpoint attaches a copy of the estoppel certificate it furnished to Staples as support for this last point.

The trustee, of course, responds that the court was quite correct in its original decision and requests that the motion be denied.

## ANALYSIS

There is, as it turns out, merit to Eastpoint's argument, though further review of the law leads the court to conclude that the result in this case is not altered. In sum, the trustee did not, as this court surmised, file its motion to assume and assign "pursuant to § 365(f)(1)," as is confirmed from a review of the motion. However, the case law confirms that the provision upon which Eastpoint relies is unenforceable under § 365(f)(1) anyway, and that subsection is *not* superseded by the assumption of the underlying lease "with all of its benefits and burdens." H.R.Rep. No. 595, 95th Cong., 1st Sess. 349 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 6305 (§ 365(f)(1) "partially invalidates restrictions on assignment of contracts or leases by the trustee to a third party"); *Matter of U.L. Radio Corp.*, 19 B.R. 537, 540 (Bankr.S.D.N.Y. 1982); *In re Pin Oaks Apts.*, 7 B.R. 364, 367 (Bankr.S.D.Tex.1980); *In re Dartmouth House Nursing Home, Inc.*, 24 B.R. 256, 262 (Bankr.D.Mass.1982); *In re Brentano's Inc.*, 29 B.R. 881, 883 (Bankr. S.D.N.Y.1983); *In re TSW Stores of Nanuet Inc.*, 34 B.R. 299, 305 (Bankr.S.D.N.Y. 1983); *In re Peaches Records and Tapes, Inc.*, 51 B.R. 583, 590 (Bankr.9th Cir.1985); *In re Howe*, 78 B.R. 226, 229 (Bankr.D.S.D. 1987); *In re Cafe Partners/Washington 1983*, 90 B.R. 1, 6 (Bankr.D.D.C.1988).

### I. *The consent issue*

This court did premise a goodly portion of its argument in its original decision on the notion that consent was not an issue here because the trustee had filed its motion to assume pursuant to that portion of § 365(f) which permits a trustee to assign a lease notwithstanding any provision which restricts assignment (in effect operating as an "anti-alienation" clause). The court reasoned that Eastpoint had failed to timely assert its rights under Article X of its lease, and could not now be heard to raise the issue because the trustee had effectively skirted that entire provision of the lease by employing § 365(f)(1). A review of the original motion now confirms that that assumption was erroneous.

In his motion, the trustee observes that "[t]here is no provision in the leases that would restrict performance of the lease to the Debtor alone and it is anticipated that the lessors ... would not object to the assignment and, in fact, it is the Trustee's position that these parties will consent to the assumption or assignment in that it would be in the [sic] best interest to do so." Trustee's Motion to Assume and Assign Leases ..., para. 3. Obviously, Eastpoint did not object to this motion, given this language, nor did it further request a hearing when the subsequent notice was given pursuant to this court's later order (the order which authorized the sale to Staples).[1] Instead, when given the opportunity, it did in fact "consent," via language in the estoppel certificate.[2] Thus, the record does not support the premise upon which this court's opinion was couched. The trustee does not seem to have relied explicitly on § 365(f)(1) in his motion. To the contrary, the trustee seems to have believed at the time that the lease presented no impediment to the proposed assignment.

That is not the end of the discussion, however.

### II. *The invalidity of clauses which restrict assignment of leases*

█ As this court found in its original decision, provisions such as that contained in this lease have uniformly been held to work as a restriction on alienation or assignment of leases, and have accordingly been struck down. *See In re Mr. Grocer,*

1. The court ordered further notice because the original motion to assume and assign contemplated an assignment to Office Depot. When the ultimate successful bidder turned out to be Staples, the court concluded that lessors were entitled to decide whether they had any problems with having Staples take over the leases instead of Office Depot, as originally indicated in the motion.

2. For what it is worth, it should be noted that the estoppel certificate was issued to Staples, not the trustee, so technically Eastpoint did not give its consent to the *trustee*. However, the lease cannot be read to require that the consent had to be given to the trustee as opposed to the assignee in order to be effective.

77 B.R. 349, 353–54 (Bankr.D.N.H.1987) (provisions may be refused enforcement in a bankruptcy context in which there is not substantial economic detriment to the landlord shown and in which enforcement would preclude the estate from realizing the intrinsic value of its assets; lessor's right of first refusal over potential assignees invalid restriction on assignment); *see also In re David Orgell, Inc.,* 117 B.R. 574, 576 (Bankr.C.D.Cal.1990) (provision allowing rent increase in event of assignment invalid); *In re Howe,* 78 B.R. 226, 230–31 (Bankr.D.S.D.1987) (provision calling for 4% assumption fee was unnecessary restriction on assignment); Simpson, *Leases and the Bankruptcy Code: Tempering the Rigors of Strict Performance,* 38 Bus. Law. 761, 65 (1982). Eastpoint argues that all of that is for naught because here the trustee assumed the leases without first obtaining a determination that the lease provisions in question are invalid. Eastpoint points out the settled case law that, when a trustee assumes a lease, he assumes it with all of its benefits *and burdens. See In re Holland Enterprises, Inc.,* 25 B.R. 301, 303 (E.D.N.C.1982); *In re Silver,* 26 B.R. 526, 529 (Bankr.E.D.Pa. 1983); *In re Diamond Head Emporium, Inc.,* 69 B.R. 487, 494 (Bankr.D.Haw.1987); *In re Cafe Partners/Washington 1983,* 90 B.R. at 6. Eastpoint's argument fails to take note of the near universal position of courts that have construed the assumption provisions together with the assignment provisions that the latter is an exception to this general rule. *Cafe Partners,* 90 B.R. at 6 ("[w]ith respect to a lease, the Bankruptcy Code ... overrides any lease provision restricting the ability of the debtor to assign the lease to a third party ..."); *TSW Stores,* 34 B.R. at 305 ("[t]here are certain contractual provisions, however, which a bankruptcy court may disregard when authorizing a debtor to assume an executory contract or lease ..."); *Brentano's,* 29 B.R. at 882, 882 n. 2 ("[a]ssignment of a lease must comply with Code section 365(f), which, in pertinent part, states [reciting, *inter alia,* subsection (1)] ..." and "[t]he ability to assign, notwithstanding any anti-assignment lease provi-

sions is made clear in Code section 365(f) which 'invalidates contractual provisions that permit termination or modification ... as contrary to the policy of this subsection' "); *Dartmouth House Nursing Home,* 24 B.R. at 262 ("[n]umerous and various provisions and clauses which would be enforceable in non-bankruptcy law, are invalid in bankruptcy [citing *inter alia* to § 365(f)(1)] ..."); *U.L. Radio,* 19 B.R. at 540 ("[s]ubsection (f)(1) 'partially invalidates restrictions on assignment of contracts or leases by the trustee to a third party.' ").

  ▮ All of these cases also point out that the only affirmative duty imposed on the trustee by subsection (f) is that spelled out in subsection (f)(2), that the trustee first assume the lease, curing any outstanding defaults, and give adequate assurance of the assignee's future ability to perform. 11 U.S.C. § 365(f)(2); *Matter of Fred Sanders Co.,* 22 B.R. 902, 906 (Bankr. E.D.Mich.1982); *U.L. Radio,* 19 B.R. at 541. No affirmative duty is raised by subsection (1). Rather, the clause *by operation of law* invalidates provisions which operate to restrict (or as the case law says, discourage) a trustee from otherwise assigning the lease. H.R.Rep. No. 595, 95th Cong., 1st Sess. 359 (1977); *In re Howe,* 78 B.R. 226, 229 (Bankr.D.S.D.1987).

  In its original brief in support of its motion, Eastpoint relied on a Ninth Circuit decision for the proposition that, by not raising the issue in his original motion or at the hearing thereon, the trustee waived the benefits of subsection (f)(1). *In re J.F. Hink & Son,* 815 F.2d 1314, 1317–18 (9th Cir.1987). There, however, it was the *assignee* who sought the protections of the provision, not the trustee. *Id.* at 1317. Also, there was a hearing at which the assignee made it abundantly clear on the record that he knew what he was doing. The court premised its decision to deny relief to the assignee on notions of waiver and estoppel.

  ▮ The court does not find either doctrine applicable to the facts of this case. Waiver is the intentional relinquishment of a known right. *Johnson v. Zerbst,* 304

U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *New Equity Security Holders Comm. for Golden Gulf, Ltd. v. Phillips,* 97 B.R. 492, 502 (E.D.Ark.1989) (question is whether the waiving party had the requisite intent); *In re Goodwin,* 133 B.R. 141, 145 (Bankr.S.D.Ind.1990) (waiver is determined solely from the conduct of the person with the right); *In re Leon's Casuals Co., Inc.,* 122 B.R. 768, 771 (Bankr.S.D.Ala. 1990) (waiver must be shown in an unequivocal manner); *In re Ionosphere Clubs, Inc.,* 111 B.R. 436, 443 (Bankr.S.D.N.Y. 1990) (party asserting waiver has the burden of establishing same); *In re Millyard Restaurant, Inc.,* 110 B.R. 103, 104 (Bankr. D.N.H.1990) (waiver is essentially a matter of intent). Here, it cannot seriously be argued that the trustee relinquished his rights under subsection (1) with full knowledge that, as a result, he would be subjecting the estate to a potential liability approaching $2 million. Indeed, the fact that the form of the order expressly reserved jurisdiction in this court to resolve further disputes relating to the assignment (notwithstanding the fact that, upon the execution of the estoppel certificate, the assignment was a "done deal") and made specific reference to § 365(f) (subsuming thereby all of its subsections) confirms that the trustee did not intend to relinquish *any* rights which he might otherwise have under that subsection, including the right to obtain a judicial determination (if that be needed) that Article X of the lease is invalid. Certainly it is clear that, but for this motion, the trustee had no intentions whatsoever of paying Eastpoint anything, further confirming that the trustee had *not* waived his rights under that provision.

■ The estoppel argument similarly fails. Estoppel requires a showing that the party asserting the defense demonstrate that it has relied to its detriment. *In re Ellison Assoc.,* 63 B.R. 756, 764 (S.D.N.Y. 1983) (estoppel involves inducing another to act to his detriment); *Oko Corp. v. NSC Corp. (In re Oko Corp.),* 1991 WL 236874, at pp. *24, *26, 1991 Bankr. LEXIS 1597, at pp. *30, *32 (Bankr.N.D.Ill.1991) (party's

conduct must have caused one to act to his detriment; detrimental reliance or damages not shown); *In re Creative Conservation, Inc.,* 1991 WL 163739, at p. *18, 1991 Bankr. LEXIS 1373, at p. *21 (Bankr. E.D.Pa.1991) (estoppel called for only where the wrong is relied on by an innocent party to his detriment); *In re Atlantic Marble, Inc.,* 126 B.R. 463, 467, 467 n. 1 (Bankr.E.D.Pa.1991) (conduct must have induced a change in position to his injury, detriment or prejudice); *In re Penn–Dixie Industries, Inc.,* 32 B.R. 173, 178–79 (Bankr.S.D.N.Y.1983) (later inconsistent position must be prejudicial to the rights of another who relied on the prior conduct to his detriment). This Eastpoint cannot do. As a matter of law, Article X of the lease is invalid under subsection (f)(1). *See* discussion *supra.* That result would not have changed a wit had the court ruled on the issue prior to the proposed assignment. Thus, the outcome would be the same regardless when the issue were considered.

Nor can Eastpoint maintain that it would not have "consented" to the assignment had it known that the article was unenforceable. As this court observed in its original decision, Eastpoint's consent was irrelevant to whether the trustee would allowed to assign this lease. Eastpoint did not then, nor could it now, maintain that it would have prevailed under subsection (f)(2) had it only known that Article X would be held invalid and unenforceable, for the issue raised under subsection (f)(2) has nothing to do with Article X of the lease. Besides, it has already had full opportunity to argue the existence of some outstanding default that had to be cured, or that it lacked adequate assurance of future performance (the issues raised by subsection (f)(2)), but failed to do so despite adequate notice.[3] Because Eastpoint cannot demonstrate detrimental reliance, its estoppel argument must also fail.

### III. *Equitable considerations*

■ The trustee, in one of his original reply briefs, pointed out that equitable considerations would mandate the result which

---

3. In fact, the estoppel certificate confirms that ■ no such problem was (or is) present.

this court has reached independently as a matter of law. He notes that "[t]he court should consider the overall effect of its decision concerning the lease provision at issue. It is apparent that Eastpoint, having already been made whole by the assumption and assignment, will suffer no economic harm if the lease provision is stricken. It is equally apparent that the other unsecured creditors will not receive as great a dividend if the purported profit arising from the assignment, whatever the profit may be, goes entirely to Eastpoint." The point is well taken.

Under the lease provision on which Eastpoint now rests its case, Eastpoint would demand that it receive, out of the sale proceeds (which for the three stores exceeded $7 million), "an amount equal to all sums and other consideration paid to Tenant [trustee] by the assignee ... with such assignment sums including sums paid for the sale of Tenant's fixtures, leasehold improvements, equipment, furniture, furnishings or other personal property, less the then net unamortized or undepreciated cost thereof ..." Eastpoint Lease, ¶ 10.04. This extraordinary provision would permit Eastpoint to reap a windfall approaching $2 million, and would extend to proceeds from items which were clearly never the subject of the lease itself in the first place (e.g., equipment, furniture, furnishings and other personal property). The windfall bears no relationship at all to the economic impact of the assignment on Eastpoint. In fact, the assignment itself, without any further consideration, proved to be a substantial boon which most landlords in liquidation proceedings never get a chance to enjoy, for Eastpoint now has a highly solvent tenant with a strong, ongoing business, without the premises ever having gone dark and without Eastpoint ever having to incur any of the expenses normally associated with finding a new tenant and making the premises ready. If ever a circumstance demanded the intervention of equity, this one does.

Under the Bankruptcy Act, the rules regarding assignments were much more favorably skewed in favor of the non-debtor landlord, yet the Second Circuit, in a case decided under the Act, observed (in the context of a lease termination clause which promised to have a similarly deleterious impact),

> In determining whether to enforce the lease termination here, therefore, we must consider not only the interests of the landlord but also those of the debtor and its creditors. Possession by Queens will not prejudice Carol, which is protected by a sizeable security deposit, except to deny it a windfall in the form of increased rent to which we hold it is not equitably entitled. Enforcement of the forfeiture, on the other hand, would destroy a now profitable debtor by depriving it of its most valuable asset—its location. It also would needlessly injure trade creditors and those outside investors who have furnished capital which has resulted in Queens' rehabilitation.

*Queens Boulevard Wine & Liquor Corp. v. Blum,* 503 F.2d 202, 206–07 (2d Cir. 1974). This case certainly confirms the time-honored rule that bankruptcy proceedings are first and foremost proceedings in equity, and that this case is an appropriate subject for the exercise of this court's equitable powers.

■ Here, the only point that Eastpoint can hope to make to fend off that exercise is that it is now too late for the trustee to raise this sort of equitable concern. But the trustee points out that the court retained jurisdiction in its order to "[i]nterpret, implement and enforce the terms and provisions of this Order ... and of each of the agreements executed in connection therewith ..." Order Authorizing Sale, June 25, 1991. That order, in this court's view, gives this court ample authority to exercise the equity jurisdiction conferred on it by the Bankruptcy Code, at the very least in a situation such this, where *not* to intervene would most assuredly be inequitable.

For these reasons, the court finds and concludes that, despite the failings in the logic in this court's original decision, its conclusion is still correct. The court thus

ratifies and confirms its original order denying the relief requested by Eastpoint.

So ORDERED.