**In re JAMESWAY CORPORATION, et al., Debtors.**

**Bankruptcy No. 95–44821 (JLG).**

United States Bankruptcy Court, S.D. New York.

Sept. 30, 1996.

Kaye, Scholer, Fierman, Hays & Handler, L.L.P., New York City, for Debtors.

Bachner, Tally, Polevy & Misher, L.L.P., New York City, for Massachusetts Mutual Life Insurance Co.

Otterburg, Steindler, Houston & Rosen, P.C., New York City, for Monticello Mall and Tri–State Mall.

Traub, Bonacquist & Fox, New York City, for Unsecured Creditors' Committee.

### MEMORANDUM DECISION REGARD-ING JAMESWAY'S REQUEST FOR ORDER DECLARING LEASE AS-SIGNMENT RESTRICTIONS UNEN-FORCEABLE

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Pursuant to § 365(a) of the Bankruptcy Code, we authorized Jamesway Corporation, as chapter 11 debtor-in-possession ("James-way" or the "debtor"), to assume and assign three leases of non-residential real property (the "Leases") with Massachusetts Mutual Life Insurance Company ("Mass Mutual"), Monticello Mall ("Monticello") and Tri–State Mall ("Tri–State" and together with Mass Mutual and Monticello, the "Landlords") respectively, as landlords. Jamesway seeks an order pursuant to § 365(f)(1) of the Bankruptcy Code invalidating provisions in those leases obligating it to pay the Landlords differing percentages of the "profit" it realized from the assignments and directing that $50,000 placed in escrow pursuant to the Newberry Order (defined below) be released to it. Over the Landlords' objections, we grant that request.

#### Facts

The facts are not disputed. On October 18, 1995 ("petition date"), Jamesway and its affiliates (collectively, the "debtors") filed

separate petitions for relief under chapter 11 of the Bankruptcy Code in this district. At that time, debtors operated discount department stores under the "Jamesway" name. Debtors are in possession of their businesses and properties as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

As of the petition date, Jamesway and Mass Mutual, as successor-in-interest to Valley Green Mall Co., were parties to an agreement dated July 16, 1986, as amended (the "Newberry Lease"), whereby Jamesway, as tenant, leased certain retail space located in the Newberry Commons shopping center in Etters, Pennsylvania. Paragraph 17 of that lease states in relevant part that:

> [i]f Tenant assigns this Lease or sublets all or substantially all of the demised premises (not including an assignment or sublease to an affiliate, parent or subsidiary of Tenant, or to a successor to Tenant by merger, consolidation or operation of law), and such assignment or subletting commences in or extends into the extension periods reserved under Article 3 of this Lease, then during the first twenty (20) years of such extension periods in which such assignment or sublease is in effect, Tenant shall pay Landlord 50% of the "profits" received by Tenant from the assignee or sublessee. Thereafter, Tenant shall pay Landlord 60% of such profits. As used herein, "profits" shall mean the amount, if any, paid by the assignee or sublessee to Tenant in excess of the fixed rent and additional rent payable by Tenant for the corresponding period of such assignment or sublease, excluding the reasonable costs to Tenant for effectuating such assignment or sublease (such as, without limitation, brokerage fees, reasonable attorneys' fees and costs to prepare the demised premises for such assignee or sublessee) and the amount, if any, paid by such assignee or sublessee to purchase Tenant's fixtures, equipment or leasehold improvements in the demised premises.

Newberry Lease ¶ 17. On or about February 9, 1996, Jamesway moved under § 365 of the Bankruptcy Code to assume and assign the Newberry Lease to Rite Aid of Pennsyl-

vania, Inc. ("Rite Aid") for $100,000 (the "Rite Aid Motion"). Over Mass Mutual's objection, we granted the motion. The dispute over the enforceability of ¶ 17 arose upon the settlement of the order implementing our decision ("Newberry Order"). The parties agreed to defer consideration of that issue and pursuant to the Newberry Order debtor placed in escrow $50,000 of the assignment proceeds pending resolution of the dispute.

As of the petition date Jamesway was party to an agreement dated April 18, 1966 (as amended, the "Monticello Lease"), as amended by an Amendment and Modification to Lease dated November 30, 1987 (the "Monticello Lease Modification"), whereby Monticello, successor-in-interest to Monticello Mall, Inc., leased certain retail premises to Jamesway in a shopping center located in Monticello, New York. Jamesway also leased premises located in Montague, New Jersey pursuant to an agreement with Tri–State dated as of May 16, 1967 (as amended, the "Tri–State Lease"), as amended by an Amendment and Modification to Lease dated January 31, 1988 (the "Tri–State Lease Modification"). Paragraphs 13 and 14 of the Tri–State Lease and Monticello Lease Modifications, respectively, are identical and state in relevant part as follows:

> [U]pon the Tenant's sale, transfer, assignment, underletting or underleasing of the demised premises or a material portion thereof the Tenant shall pay to the Landlord, in consideration of this lease modification, an amount equal to one third (⅓) of the appreciated value of the leasehold received by the Tenant from the transferee, assignee, underlettee or underleasee of the premises. The appreciated value of the leasehold being that amount of money or other consideration paid by the transferee, assignee, underlettee or underleasee for the Tenant's leasehold interest less the net book value of any fixtures, inventory and leasehold improvements transferred.

Tri–State Lease Modification ¶ 13; Monticello Lease Modification ¶ 14. By order dated February 5, 1996, we approved debtor's assumption and assignment to Ames Realty II, Inc. of ten leases, including the Monticello

Lease, for $2,750,000. By order dated March 28, 1996, we authorized debtor to assume and assign the Tri–State Lease to SNJ Corporation for $80,000. Neither Monticello nor Tri–State objected to the respective lease assignments and the relevant orders contain no escrow provisions for amounts allegedly payable to Monticello and Tri–State from the assignment proceeds. In both orders we retained jurisdiction to determine any disputes regarding the assignments. Monticello and Tri–State have each filed a proof of administrative claim in the respective sums of $83,250 and $26,640, for what they allege to be their share of the profits realized by Jamesway from the lease assignments.

### Discussion

Our subject matter jurisdiction of this contested matter is predicated on 28 U.S.C. §§ 1334(b) and 157(a) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A), (N) and (O).

■■■ Section 365(a) of the Bankruptcy Code authorizes a debtor-in-possession to assume or reject, subject to the court's approval, any executory contract or unexpired lease of the debtor. 11 U.S.C. § 365(a). A debtor-in-possession may assign an unexpired lease of the debtor only if it assumes the lease in accordance with § 365(a), and provides adequate assurance of future performance by the assignee, whether or not there has been a default under the lease. *See* 11 U.S.C. § 365(f)(2). Except as otherwise provided in the Bankruptcy Code, an executory contract or unexpired lease is assumed *cum onere. See Thompson v. Texas Mexican Railway Co.,* 328 U.S. 134, 141, 66 S.Ct. 937, 942, 90 L.Ed. 1132 (1946) (discussing assumption of lease under § 70 of the former Bankruptcy Act); *In re Nitec Paper Corp.,* 43 B.R. 492, 498 (S.D.N.Y.1984); *Rockland Center Associates v. TSW Stores of Nanuet, Inc. (In re TSW Stores of Nanuet, Inc.),* 34 B.R. 299, 304 (Bankr.S.D.N.Y.1985). In rele-

vant part, § 365(f) of the Bankruptcy Code states that

(1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under [11 U.S.C. § 365(f)(2) ];

\* \* \* \* \* \*

(3) Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee.

11 U.S.C. § 365(f). Jamesway contends that the subject lease provisions are void and unenforceable under § 365(f)(1) because they limit its ability to realize the full economic value of the Leases for the benefit of all unsecured creditors.

■■■ As a preliminary matter, Mass Mutual contends that Jamesway cannot challenge the enforceability of ¶ 17 of the Newberry Lease because it failed to do so when it assumed and assigned that lease. The Tri–State and Monticello landlords do not make a waiver argument. Section 365(f)(1) works by operation of law to invalidate lease provisions which restrict or discourage a debtor-in-possession from assigning the lease. *In re Office Products of America, Inc.,* 140 B.R. 407, 410 (Bankr.W.D.Tex.1992); *In re Howe,* 78 B.R. 226, 229 (Bankr.D.S.D.1987). Jamesway did not have to raise the issue when it assumed and assigned the Newberry Lease and it has not waived its right to do so. Waiver is the intentional relinquishment of a known right. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). As the party asserting the defense, Mass Mutual must prove it. *In re Ionosphere Clubs, Inc.,* 111 B.R. 436, 443 (Bankr.

S.D.N.Y.1990). Waiver must be evidenced by a clear manifestation of intent and be unmistakable and unambiguous. *Port Distributing Corp. v. Pflaumer,* 880 F.Supp. 204, 211 (S.D.N.Y.), *aff'd,* 70 F.3d 8 (2d Cir.1995). Mass Mutual has not demonstrated that Jamesway waived its right to challenge the enforceability of ¶ 17 and the Newberry Order's provision for the $50,000 escrow proves the opposite. *See In re Office Products of America, Inc.,* 140 B.R. at 410–11 (reservation of bankruptcy court jurisdiction in order approving lease assumption and assignment confirms that trustee did not waive rights under § 365(f)(1) of the Bankruptcy Code). The cases cited by Mass Mutual are distinguishable. In *Cukierman v. Mechanics Bank of Richmond (In re J.F. Hink & Son),* 815 F.2d 1314, 1317–18 (9th Cir.1987), the court found a waiver of rights to challenge post-assignment rent increases where the assignee expressly consented to it in the lease assignment agreement. No such pact exists here. In *In re Village Rathskeller, Inc.,* 147 B.R. 665, 671–72 (Bankr.S.D.N.Y.1992), the court enforced a subordination provision after finding that § 365(f)(1) was inapplicable.

Mass Mutual contends that in authorizing Jamesway to assume the Newberry Lease, we necessarily found that assumption of that lease is in the best interests of the estate, even if the sums allegedly due under ¶ 17 are payable to Mass Mutual. It argues that as a matter of fact, ¶ 17 did not impair Jamesway's ability to assign the Newberry Lease and as a legal matter, under § 365(f) Jamesway must abide by the burdens of the assumed lease.

Mass Mutual opposed the Rite Aid Motion asserting that Jamesway and Rite Aid failed to provide adequate assurance of future performance under the Newberry Lease. It contended that Rite Aid's then intended (and now current) use of the premises for non-retail purposes breached use provisions in other tenants' leases in Newberry Commons and violated § 365(b)(3)(C) of the Bankruptcy Code. Under that section, for purposes of §§ 365(b)(1) and 365(f)(2)(B) of the Bankruptcy Code, adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use or exclusivity provision, and will not breach any such provisions in any other lease, financing agreement, or master agreement relating to such shopping center . . . .

11 U.S.C. § 365(b)(3)(C). Mass Mutual also argued that the proposed assignment violated § 365(b)(3)(D) because the Newberry Lease allegedly mandates that the premises be operated as a retail store or not at all. Under § 365(b)(3)(D), debtor must demonstrate "that assumption or assignment of [the subject] lease will not disrupt any tenant mix or balance in such shopping center." 11 U.S.C. § 365(b)(3)(D).

We overruled the objection and granted the Rite Aid Motion. *See* Order dated March 1, 1996; Transcript of February 27, 1996 Hearing on Rite Aid Motion, pp. 56–64. We held that the Newberry Lease is a lease of real property in a shopping center. *Id.,* p. 56. Subject to irrelevant restrictions, we construed the lease to permit debtor to use the premises for any legal purpose. *Id.,* pp. 56–60. We noted, but did not address, the profit sharing provision in ¶ 17 of the lease. *Id.,* p. 60. Thus, contrary to Mass Mutual's assertion, we did not consider the impact of ¶ 17 on Jamesway's right to assume and assign the lease.

Mass Mutual argues that § 365(f)(1) does not empower us to nullify the profit sharing provisions in the lease, but merely permits us to authorize the assignment over its objection. It argues that our power to invalidate lease provisions is limited by § 365(f)(3) to "ipso facto" or forfeiture provisions and that to hold otherwise will read § 365(f)(3) out of the statute. Courts do not have carte blanche to rewrite leases under §§ 365(f)(1) and (f)(3) or any provision of the statute. Simpson, *Leases and the Bankruptcy Code: Tempering the Rigors of Strict Performance,* 38 Bus.Law. 60, 75 (cited hereinafter as "*Simpson*"); *In re Howe,* 78 B.R. at 231. However, § 365 reflects the clear Congressional policy of assisting the debtor to realize the equity in all of its assets. *See In re Howe,* 78 B.R. at 230 n. 7

(citing *Matter of Haffner's 5. Cent to $1.00 Stores, Inc.,* 26 B.R. 948, 949 (Bankr. N.D.Ind.1983); *Simpson* at p. 61). Toward that end, § 365(f)(1) permits assignment of an unexpired lease despite a clause in the lease prohibiting, conditioning or restricting the assignment. Subsection (f)(3) goes beyond the scope of subsection (f)(1) by prohibiting enforcement of any clause creating a right to modify or terminate the contract because it is being assumed or assigned, "thereby indirectly barring an assignment by the debtor." *In re Howe,* 78 B.R. at 226 (citing *In re J.F. Hink & Son,* 815 F.2d at 1317–18; *In re Sapolin Paints, Inc.,* 20 B.R. 497, 509 (Bankr.E.D.N.Y.1982)). "The essence of Subsections (1) and (3) is that all contractual provisions, not merely those entitled 'anti-assignment clauses' are subject to the court's scrutiny regarding their anti-assignment effect." *Id.* at 229–30 (citing *Matter of U.L. Radio Corp.,* 19 B.R. 537, 543 (Bankr.S.D.N.Y.1982)). While they operate in tandem to promote the Congressional policy favoring a debtor's ability to maximize the value of its leasehold assets, subsections (f)(1) and (f)(3) deal with different problems; (f)(1) with provisions that prohibit, restrict or condition assignment, and (f)(3) with provisions that terminate or modify the terms of a lease because it has been assumed or assigned. For this reason, construing the former to invalidate provisions that directly or indirectly restrict the debtor's ability to assign the subject lease does not render § 365(f)(3) superfluous.

Moreover, Mass Mutual's literal construction of § 365(f)(1) makes nonsense of the statute while undermining its purpose. For Mass Mutual, even if assignment of an assumed lease were expressly conditioned upon the payment of a portion of the proceeds realized upon assignment to the lessor, § 365(f)(1) would permit assignment but would not affect any lease term associated with the condition. As applied herein, it would mean that Jamesway could assign the Leases provided it paid the Landlords the relevant percentages of the profits realized through the assignments. In other words, Jamesway would be complying with the very condition that subsection (f)(1) was designed

to invalidate. This is not the correct reading of the statute.

■■■ In furtherance of Congressional policy favoring the assumption and assignment of unexpired leases as a means of assisting the debtor in its reorganization or liquidation efforts, we interpret § 365(f)(1) to invalidate provisions restricting, conditioning or prohibiting debtor's right to assign the subject lease. *See In re Howe,* 78 B.R. at 228; *In re U.L. Radio Corp.,* 19 B.R. at 543. No court has read the statute as narrowly as Mass Mutual. Rather, lease provisions conditioning a debtor-in-possession's right to assignment upon the payment of some portion of the "profit" realized upon such assignment are routinely invalidated under § 365(f)(1). *See Robb v. Schindler,* 142 B.R. 589 (D.Mass.1992) (invalidating under § 365(f)(1) lease clause conditioning assignment of lease upon lessee's payment of 80% of net proceeds to lessor); *South Coast Plaza v. Standor Jewelers West, Inc. (In re Standor Jewelers West, Inc.),* 129 B.R. 200 (9th Cir. BAP 1991) (provision in lease requiring lessee to remit to landlord 75% of appreciation in value of lease as condition to landlord's consent to assignment constituted invalid restriction on assignment even if valid under state law); *In re The National Sugar Refining Co.,* 21 B.R. 196 (Bankr. S.D.N.Y.1982) (lease provision that gave landlord, as part of price of its consent to assignment, right to request profits realized by tenant upon assignment applied only to consensual assignment and was unenforceable in tenant's bankruptcy by operation of § 362(f)); *see also In re Howe,* 78 B.R. at 228 (invalidating provision of executory sale contract conditioning consent to assignment upon payment by debtor of "assumption fee" equal to 4% of amount outstanding under contract).

■■■ Mass Mutual distinguishes those cases arguing that ¶ 17 is enforceable under § 365(f)(1) because it does not prevent Jamesway from assigning the Newberry Lease to Rite Aid, does not alter any term in the lease based upon the assignment and is not triggered by the filing of Jamesway's chapter 11 case. It urges that the only effect of ¶ 17 is to allocate funds between James-

way and the landlord upon assignment of the lease and that it is relevant only as it may impact on Jamesway's business judgment in electing to assume or reject the leases. The practical effect of the profit sharing clause in the Newberry Lease is the same as those at issue in the cited cases: it limits Jamesway's ability to realize the intrinsic value of the lease. *See In re Howe*, 78 B.R. at 230 n. 7 ("The four percent fee may also be viewed as an attempt by the vendor to extract any profit realized upon the assignment of the contract.... Such a purpose would frustrate the Congressional policy of assisting the debtor in realizing the equity in all his or her assets") (citing *In re National Sugar Refining Co.*, 21 B.R. 196 (Bankr.S.D.N.Y. 1982); *Matter of Haffner's 5 Cent to $1.00 Stores, Inc.*, 26 B.R. at 949; *Simpson* at p. 61)). The Landlords cannot, by artful drafting, thwart the fundamental bankruptcy policy allowing a debtor to realize maximum value from its assigned leases for the benefit of its estate and creditors.

Finally, the Tri–State and Monticello landlords contend that § 365(f)(1) bars enforcement of profit sharing provisions that are so burdensome as to constitute penalties. They urge that we should conduct a balancing test and enforce the provisions at issue here as reasonable fees payable upon assignment. Some cases contain language leaving open the possibility that the courts might have ruled differently had the amounts payable by the debtor upon assignment been less. *See, e.g., Robb v. Schindler*, 142 B.R. at 592; *In re Office Products of America, Inc.*, 140 B.R. at 412; *In re Howe*, 78 B.R. at 230. None of these courts ruled that the contract provisions in question would be enforced if the debtors had to pay a "reasonable" percentage of the assignment proceeds. Nothing in § 365(f)(1) supports the Landlord's position.

### Conclusion

We grant debtor's request for an order declaring that the profit sharing provisions of the Leases are unenforceable and direct that the $50,000 currently held in escrow from the assignment proceeds of the Newberry Lease be released to debtor.

SETTLE ORDER.