**In the Matter of HOLLY'S, INC., Debtor.**

**Bankruptcy No. 91–84931.**

United States Bankruptcy Court,
W.D. Michigan.

Dec. 29, 1995.

Thomas C. Clinton, Grand Rapids, Michigan, for Debtor Holly's, Inc.

James D. Clarke, Assistant Attorney General, Lansing, Michigan, for the State of Michigan.

## OPINION REGARDING MOTION TO SET ASIDE STATE OF MICHIGAN TAX LIEN

JAMES D. GREGG, Bankruptcy Judge.

### I. ISSUE

The Debtor in this case, Holly's Inc. ("Debtor") has filed a motion with this court seeking a determination whether a prepetition tax lien filed by the State of Michigan (sometimes referred to as the "State") to secure unpaid taxes owed by the Debtor remains valid and enforceable after confirmation of the Debtor's chapter 11 plan. In support of its motion, the Debtor argues that the lien was not specifically provided for in the Debtor's confirmed plan of reorganization, and therefore, the lien was extinguished when the plan was confirmed by this court. It is also asserted that the State of Michigan voluntarily relinquished its lien by entering into a post-confirmation stipulation which specifies that the State's claims will be "unsecured."

In response, the State contends that the confirmed plan contemplates the continuation of the prepetition tax lien against the Debtor's property. With respect to the subsequent stipulation, the State maintains that it was simply agreeing to a reclassification of its rights in the bankruptcy case, but it did not agree to relinquish its right to enforce the tax lien after confirmation of the Debtor's chapter 11 plan.

The issue presented by the Debtor's motion is rather straightforward: Does the State of Michigan retain a valid and enforceable post-confirmation tax lien on the reorganized Debtor's property?

## II.  JURISDICTION

This court has previously issued an extensive opinion addressing the issue of post-confirmation jurisdiction in this chapter 11 case.  *See Holiday Inn–East v. City of Kentwood (Matter of Holly's, Inc.),* 172 B.R. 545 (Bankr.W.D.Mich.1994).  For the reasons set forth in this prior published opinion, the court has jurisdiction to decide the issues raised in the instant motion.  The issue raised is related to the Debtor's chapter 11 case; indeed, because this court is called upon to interpret its prior orders, the dispute "arises in" a case under title 11 and subject matter jurisdiction exists.  28 U.S.C. § 1334; 28 U.S.C. § 157(b)(1).

■  This matter is a core proceeding based upon various grounds as set forth in 28 U.S.C. § 157(b)(2), including the following subsections: (A) (matters concerning administration of estate); (K) (determination of validity of lien); (L) (confirmation of plans); and (O) (other proceedings affecting the debtor-creditor relationship).  The confirmed plan contains a retention of jurisdiction provision which is applicable to this dispute.[1]  This court has the power to enforce its orders and may "declare and determine the scope and effect of an order entered in prior bankruptcy proceedings, and the ability to rule on the legality of plan provisions, and releases and injunctions which may be part of the plan."  *Fairchild Aircraft, Inc. v. Campbell (In re Fairchild Aircraft, Inc.),* 184 B.R. 910; 916 (Bankr.W.D.Tex.1995).

## III.  BACKGROUND

This case was commenced on September 3, 1991, by the filing of a voluntary petition under chapter 11 of the Bankruptcy Code by the Debtor.[2]  On March 16, 1992, the State of Michigan filed two separate proofs of claim.  Claim No. 244 was filed as a priority claim for sales and use tax in the amount of $300,221.60.  Claim No. 258 was filed as a secured claim for sales, use and single business taxes in the amount of $474,178.76.  Prior to the commencement of the Debtor's chapter 11 case, the State of Michigan filed a notice of tax lien with the Kent County Register of Deeds in Liber 2888, page 2777, regarding the unpaid tax obligations of the Debtor.

On November 24, 1992, this court confirmed the Debtor's Third Amended Plan of Reorganization (the "Plan").  Article 9(b) of the Plan provides that, except as otherwise provided in the Plan or confirmation order, title to all property of the Debtor was to vest in the Debtor on the effective date of the Plan free and clear of all claims and interests.  Following confirmation of the Plan, the Debtor and the State of Michigan entered into a stipulation which sets forth the exact amount of the State's claims against the Debtor.  That stipulation also provides that the State's claims shall be treated as "unsecured."  On December 21, 1992, this court entered its order approving the stipulation between the Debtor and the State of Michigan.

■  On May 24, 1995, Debtor filed a Motion for Order Setting Aside State of Michigan Tax Lien (the "Motion").  In the Motion the Debtor claimed that one of its secured creditors, Erie Indemnity Company ("Erie"), was unable to obtain title insurance insuring the priority of its restated mortgage on the Debtor's property because of the outstanding tax lien.  Accordingly, the Debtor moved this court for an order setting aside the tax lien in order to enable Erie to procure title insur-

---

1.  Article VIII of the Debtor's Third Amended Plan of Reorganization dated November 24, 1992, contained several provisions with respect to the court's retention of jurisdiction, including the following:

The Court shall retain jurisdiction until the Plan is confirmed.  Following the Effective Date, the Court shall retain jurisdiction for the following purposes only:

.    .    .    .    .

3.  To resolve disputes regarding the interpretation of the Plan or to correct any defect, cure any omission or resolve any inconsistency as necessary to allow implementation of the Plan;

*See* Debtor's Third Amended Plan of Reorganization (11/24/92), p. 49.

2.  Further background facts regarding this chapter 11 case are summarized in a prior reported opinion.  *See The Sumitomo Trust & Banking Co. v. Holly's, Inc. (In the Matter of Holly's, Inc.),* 140 B.R. 643, 659–65 (Bankr.W.D.Mich.1992).

ance, and thereby facilitate implementation of the confirmed plan.[3]

On July 14, 1995, the State filed an objection to the Debtor's Motion whereby it argued that the tax lien could not be vacated by this court. In response to the State's objection, Debtor filed a memorandum of law in which it argued that the State of Michigan had in effect surrendered its rights under the tax lien by stipulating that its claims would be treated as unsecured claims. The Debtor also argued that the Plan did not provide for retention of the tax lien by the State, and therefore, the lien was extinguished upon confirmation of the Plan.

On August 11, 1995, the State of Michigan filed its Memorandum in Opposition to Motion to Set Aside State Tax Lien. In its memorandum, the State argued that under the terms of the Plan, it retained its tax lien on the Debtor's property. The State also argued that as a matter of law, tax liens survive bankruptcy and the tax lien was not extinguished by the confirmed plan. Finally, the State attached copies of correspondence which, according to the State, demonstrated that the Debtor had acknowledged the continued existence of the lien, even after confirmation of the Plan.

On August 22, 1995, this court held a hearing on the Debtor's Motion. Upon completion of argument, the court requested opposing supplemental legal memoranda to address two recently published appellate decisions regarding post-confirmation validity of liens. *See In re Penrod,* 50 F.3d 459 (7th Cir.1995) and *Cen–Pen Corp. v. Hanson,* 58 F.3d 89 (4th Cir.1995). On August 30, 1995, the Debtor filed its Post–Hearing Brief in Support of Motion to Set Aside State of Michigan Tax Lien. The State filed its Supplemental Brief on September 5, 1995.

After reading the supplemental legal memoranda, this court issued a Notice of Opportunity for Evidentiary Hearing. The State and the Debtor were authorized to present any factual evidence which they deemed relevant and necessary to the resolution of the

Motion. Neither party filed a request for an evidentiary hearing. Therefore, both parties waived their right to an evidentiary hearing. The court will decide the pending Motion based on the facts and pleadings in the record.

## IV. ANALYSIS

### A. *Status of Tax Claims Under the Plan of Reorganization*

In support of its Motion, the Debtor refers to the Confirmed Plan of Reorganization under which all property of the estate was to be revested in the Debtor free and clear of any liens or other encumbrances, except as otherwise provided in the Plan. The relevant language is contained in Sections A and B of Article IX of the Plan which provides in part:

> A. *Discharge.* The rights afforded to claimants and interest holders by this Plan shall be in exchange for and in complete release, satisfaction and discharge of all claims of any nature whatsoever, against Debtor and its agents, and, on the Effective Date, all such claims shall be released, satisfied and/or discharged in full, except as otherwise specifically provided herein. . . .
>
> B. *Revesting of Assets.* Except as otherwise provided in the Plan or in the Confirmation Order, on the Effective Date, title to all property, assets and effects of Debtor shall vest in Debtor, free and clear of all claims and interests, and the entry of the Confirmation Order shall be a judicial determination of discharge of Debtor's liabilities and debts, subject to the provisions thereof, the Bankruptcy Code and this Plan. . . .

*See* Debtor's Third Amended Plan of Reorganization (11/24/92), pp. 50–51. The foregoing Plan provisions are also reflected in the confirmation order which provides in part:

> NOW, THEREFORE, IT IS ORDERED that the Debtor's Third Amended Plan of Reorganization Dated November 24, 1992, is hereby confirmed, and that the

---

**3.** The court is aware that the determination of the validity, priority, or extent of a lien in property shall be determined in an adversary proceeding. *See* FED.R.BANKR.P. 7001. However, in this

instance, the Debtor and the State implicitly, if not explicitly, agreed to a resolve the issue through a contested matter procedure.

Debtor shall be entitled to the benefits of the discharge provided for in Atticle [sic] IX, paragraph A, of the Plan, and all property of the estate shall revest in the Debtor, subject to the provisions of Article IX, paragraph B, of the Plan providing for the vesting of title in the Designees under the Escrow Agreements (as defined in the Plan).

*See* Order Confirming Debtor's Third Amended Plan of Reorganization Dated November 24, 1992.

The Debtor argues that the Plan does not specifically provide for the retention of the liens held by the State of Michigan, and therefore, pursuant to Article IX, the liens are extinguished by the order confirming the Plan. The State argues that the Plan recognizes the continued existence of the State's liens. In its brief in opposition, the State suggests that its tax claims against the Debtor are properly categorized under Class 3a and Class 3b in Article I of the Plan which provides:

*Class 3a—Property Tax Claims with Regard to Certain Properties.* This class consists of all allowed claims held by state or local taxing authorities to the extent that such claims are for taxes (including, without limitation, claims for real or personal property taxes) assessed on any of Debtor's real or personal property that also secures any of the claims in Classes 6 through 8 of the Plan or any property abandoned or as to which a secured creditor has been granted relief from stay prior to the Effective Date.

*Class 3b—General Property Tax Claims.* This class consists of all allowed claims held by state or local taxing authorities to the extent that such claims are for taxes (including, without limitation, claims for real or personal property taxes) assessed on any of Debtor's real or personal property except those claims in Class 3a.

*See* Debtor's Third Amended Plan of Reorganization (11/24/92), p. 4. Under Article II of the Plan, Class 3 claims are entitled to the following treatment:

*Class 3a.* Claims in Class 3a shall not be impaired. The Class 3a creditors shall retain the liens securing their claims.

Creditors in Class 3a shall receive no payments under the Plan on account of their claims; however, at any time after the Effective Date such creditors may exercise whatever legal, equitable or contractual rights they possess with respect to the properties securing their Class 3a claims.

*Class 3b.* Claims in Class 3b shall be impaired. The holder of each Class 3b claim shall retain the lien securing its claim and shall receive a secured note (a "Class 3b Note") in the form attached as Exhibit B hereto in the allowed amount of its claim.

*See* Debtor's Third Amended Plan of Reorganization (11/24/92), p. 8.

It should be noted that the categories described by Class 3a and 3b of the Plan specifically refer to "Property Tax Claims" and therefore, do *not* encompass claims based on unpaid sales and use taxes or single business taxes which gave rise to the State's imposition of a tax lien against the Debtor's property. Arguably, the State's tax claims could be classified as a priority tax claim under Class 4 of the Plan which provides as follows:

*Class 4—Priority Taxes.* This class consists of all allowed unsecured claims of federal, state, or local taxing authorities (including, without limitation, claims held by the Internal Revenue Service for federal withholding taxes and federal income taxes; *claims held by the State of Michigan for state sales and use taxes,* income taxes, withholding taxes, and *single business taxes;* claims held by the [MESC] for unemployment contributions; and claims held by any local taxing authority for income taxes or accommodations taxes), excluding those claims in classes 3a and 3b, but only to the extent that any such claims are entitled to priority under Section 507(a)(7) of the Bankruptcy Code.

*See* Debtor's Third Amended Plan of Reorganization (11/24/92), pp. 4–5 (emphasis added). However, Class 4 specifically pertains to "unsecured claims" and therefore would seem to exclude the State's claims which were secured by its tax lien. The State's claims do not clearly fit within any of the

classification of claims under Article I of the Plan. Nor does the Plan specifically address the State's tax lien against the Debtor's property. Thus, the Plan itself is ambiguous with respect to the treatment of the State's claims and its attendant tax lien.

## B. *Stipulation and Order Regarding State Tax Claims*

■ Any uncertainty regarding the State's rights under the Plan of Reorganization was removed by a subsequent stipulation between the Debtor and the State which clarified the status of the State's tax liens. The stipulation provides as follows:

The State of Michigan, Department of Treasury, Revenue Division, has filed two claims in the above-entitled case.

A. Claim No. 244 filed as a priority claim for sales and use tax in the amount of $300,221.60.

B. Claim No. 258 filed as a secured claim for sales, use and single business taxes in the amount of $474,178.76.

*The State of Michigan, Department of Treasury, Revenue Division, has agreed that Claim No. 258 is not a secured claim under Section 506 of the Bankruptcy Code but rather a priority claim in the amount of $323,152.94 and unsecured claim for the penalty portion of Claim No. 258 in the amount of $151,025.82.*

The Debtor and the State have agreed that the claims of the State of Michigan for pre-petition taxes owed by the Debtor will be as follows:

A. Claim No. 244 in the amount of $300,221.60 is a Class 4 Priority Claim.

B. Part of Claim No. 258 in the amount of $323,152.94 is a Class 4 Priority Claim.

C. The balance of Claim No. 258 for penalties is an Unsecured Claim in the amount of $151,025.82.

*See* Stipulation and Order Regarding State of Michigan Tax Claims (emphasis added). The stipulation was executed by the Debtor's attorney on December 16, 1992 and by the State's attorney on December 17, 1992. The stipulation also included a proposed order which provided as follows:

IT IS ORDERED that all the pre-petition tax claims of the State of Michigan against Debtor will be treated under the Debtor's Plan as follows:

A. A Class 4 Priority Claim in the amount of $300,221.60 for sales and use tax.

B. A Class 4 Priority Claim in the amount of $323,152.94 for sales use and single business tax.

C. An Unsecured Claim in the amount of $151.025.82.

*See* Stipulation and Order Regarding State of Michigan Tax Claims. After reviewing the stipulation of the parties, this court signed the proposed order on December 21, 1992. No appeal was lodged by any party in interest and the order is a final order.

Under the express terms of the foregoing stipulation and order, the State specifically agreed that its claims against the Debtor would be treated as "unsecured" priority claims. Therefore, the State waived any liens it may have held to secure its prepetition tax claims against the Debtor.

Notwithstanding the express language of the stipulation and order, counsel for the State still maintains that there was no agreement to release the tax liens. Instead, the State asserts that it "agreed to a different classification in the Bankruptcy forum but did not agree to a release of its rights which exist independent of the Bankruptcy entity." *See* State's Memorandum in Opposition to Motion, p. 8. The memorandum includes copies of correspondence which, according to the State, demonstrate that the Debtor continued to recognize the validity of the State's tax lien even after the entry of the stipulation and order.

■ The documents attached to the State's brief were not properly admitted into evidence and, therefore, cannot be considered by this court in ruling on the Motion. As noted above, the parties have declined this court's invitation to conduct an evidentiary hearing in this matter. Therefore, this court must base its decision on the documents and pleadings that are already in the record, including the stipulation and order pertaining to the State's tax lien.

The court finds the language of the stipulation and order is clear and unambiguous. The State expressly agreed that its claims against the Debtor were *not* secured. Thus, the State voluntarily agreed to release any lien it held securing its tax claims against the Debtor. This stipulation was signed by counsel and was formally approved by this court in its order of December 21, 1992. The ambiguous plan provisions were clarified by the parties in the subsequent unambiguous stipulation and court order.[4] The State is bound by the terms of the stipulation and order which compels the conclusion that the State has waived any tax lien against the Debtor's property.[5]

## V. CONCLUSION

For the foregoing reasons, the Debtor's Motion for Order Setting Aside State of Michigan Tax Lien is hereby GRANTED. The State's asserted post-confirmation tax lien on the reorganized Debtor's property is invalid and unenforceable. An order shall be entered accordingly.

**4.** The court signed the order because it appeared that the State was subordinate to the first priority secured creditor and there was insufficient value in the property to support the State's asserted secured claim under 11 U.S.C. § 506(a). The court assumed that, rather than litigating this valuation issue, the parties settled the matter because the State would have been determined to be wholly unsecured.

**5.** Because of the unique factual circumstances in this case, this court is not required to address the legal issue of whether the confirmation of a plan of reorganization under chapter 11 extinguishes any outstanding liens against the Debtor's property which are not expressly provided for in the confirmed plan. *Compare In Matter of Penrod,* 50 F.3d 459 (7th Cir.1995) (when plan of reorganization, or order confirming it, makes provision for payment of secured creditor's claim but does not mention whether secured creditor's prepetition lien is preserved, lien is extinguished, provided that secured creditor participated in reorganization) *with Manistee County v. Reef Petroleum (In re Reef Petroleum Corp.),* 92 B.R. 741 (W.D.Mich.1988) (Nims, J.) (township's failure to object to order confirming debtor's Chapter 11 plan and to sale of personal property subject to tax lien did not affect the validity of lien); *see also Cen–Pen Corp. v. Hanson,* 58 F.3d 89, 94 (4th Cir.1995) ("If a Chapter 13 plan does not address a creditor's lien (for instance, by expressly providing for payment of an allowed secured claim and cancellation of the lien), that lien passes through the bankruptcy process intact, absent the initiation of an adversary proceeding. . . .").