**In re: CROW WINTHROP OPERATING PARTNERSHIP, a Maryland general partnership, Debtor.**

**Crow Winthrop Development Limited Partnership; Crow Orange County Management Company, Inc., Appellants,**

**v.**

**Jamboree LLC, Appellee.**

**No. 99–55584.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 2000

Filed March 1, 2001

Ronald Rus, Joel S. Miliband and Leo J. Presiado, Rus, Miliband and Smith, Irvine, California, and Thomas R. Malcolm, Jones, Day, Reavis and Pogue, Irvine, California for the appellants.

Betty M. Shumener, Robert J. Odson and Henry H. Oh, Dewey Ballantine, Los Angeles, California for the appellees.

Before: BROWNING, T.G. NELSON, and SILVERMAN, Circuit Judges.

PER CURIAM:

Crow Winthrop Development Limited Partnership ("Crow Development") and Crow Winthrop Operating Partnership ("Crow Operating") were formed to acquire a parcel of property, consisting of office buildings ("Headquarters Facility") and the surrounding land. Crow Operating owned the Headquarters Facility and Crow Development owned the surrounding land. Under the terms of a reciprocal easement agreement, an affiliate of Crow Development was the managing agent of the surrounding land, which was to be used as common areas and for parking. Following a dispute and litigation about the Crow Development affiliate's management of the common areas and parking, the parties entered into a settlement agreement which allowed an affiliate of Crow Operating to manage the common areas and parking in exchange for a sub-

stantial monthly payment to Crow Development. The settlement agreement contained a change in ownership provision, providing that the parking and management provisions would terminate if Crow Operating no longer owned the Headquarters Facility.

Crow Operating subsequently filed for bankruptcy. The reorganization plan eventually approved by the bankruptcy court transferred ownership of the Headquarters Facility from Crow Operating to Jamboree. In addition, during the plan confirmation process, Crow Operating filed an assignment motion, requesting approval of the assignment of certain executory contracts to Jamboree, including the settlement agreement. The bankruptcy court entered an order approving the assignment.

Shortly thereafter, Jamboree, as the new owner of the Headquarters Facility, began receiving notices from Crow Development purporting to terminate the parking and management provisions of the settlement agreement pursuant to the change in ownership provision. Following negotiations, Jamboree filed a compliance motion, asking the bankruptcy court to determine the validity of the change in ownership provision under 11 U.S.C. § 365(f), which invalidates anti-assignment clauses in debtors' contracts. After a hearing, the bankruptcy court issued an order invalidating the change in ownership provision as an anti-assignment clause, unenforceable under § 365(f). The district court affirmed the bankruptcy court and Crow Development appeals.

■ We have jurisdiction under 28 U.S.C. § 158(d). We review the bankruptcy court's conclusions of law de novo and review findings of fact for clear error. *In re Video Depot, Ltd.,* 127 F.3d 1195, 1197 (9th Cir.1997).

■ We must first determine whether the bankruptcy court properly considered the validity of the change in ownership provision on a motion rather than in an adversary proceeding. Rule 6006(a) of the Federal Rules of Bankruptcy Procedure provides that "a proceeding to assume, reject, or assign an executory contract . . . other than as part of a plan, is governed by Rule 9014." Rule 9014 states that "[i]n a contested matter . . . not otherwise governed by these rules, relief shall be requested by motion."

On motion of Crow Operating under Rule 6006(a), the bankruptcy court issued an initial order, approving assignment of certain contracts to Jamboree pursuant to § 365. The subsequent order, issued on Jamboree's compliance motion, invalidated the change of ownership provision pursuant § 365(f). We agree with Jamboree that when the bankruptcy court issued the order invalidating the change of ownership provision under § 365(f), it was simply determining the legal effect of its initial order approving contract assignment under § 365. *See In re Office Products,* 136 B.R. 992, 996 (Bankr.W.D.Texas 1992); *In re Holly's, Inc.,* 190 B.R. 297, 298 (Bankr. W.D.Mich.1995).

Because § 365(f) applies by operation of law, it is irrelevant that Jamboree did not challenge the change of ownership provision at the time of the initial assignment motion. "[T]he outcome would be the same regardless when the issue [was] considered." *In re Office Products,* 140 B.R. 407, 411 (W.D. Texas 1992). Accordingly, we conclude that the bankruptcy court properly considered the validity of the change of ownership provision on Jamboree's motion.

■ The bankruptcy court did not err in invalidating the change in ownership provision as an unenforceable anti-assignment clause under § 365(f). Section 365(f) permits the assignment of contracts by debtors notwithstanding a contractual "provision . . . that prohibits, restricts, or conditions the assignment." 11 U.S.C. § 365(f)(1). That section further stipulates that rights under such contracts "may not be terminated or modified . . . because of the . . . assignment." 11 U.S.C. § 365(f)(3). Crow Development argues that neither the settlement agree-

ment nor the parking and management provisions contained in it terminate "because of" the assignment of the settlement agreement. Rather, it maintains that the change of ownership provision terminates the parking and management rights only when Crow Operating no longer owns the Headquarters Facility.

 We look beyond the literal wording of a contractual provision to see whether it operates as a de facto anti-assignment clause in violation of § 365(f). *See In re Peaches Records & Tapes, Inc.*, 51 B.R. 583, 590 (9th Cir.BAP1985); *In re U.L. Radio Corp.*, 19 B.R. 537, 543 (Bankr. S.D.N.Y.1982) ("Any lease provision, not merely one entitled 'anti-assignment clause' [is] subject to the court's scrutiny regarding its anti-assignment effect.").

Theoretically, the settlement agreement could be assigned without a change in ownership of the Headquarters Facility. We agree, however, with the bankruptcy court's practical conclusion that the parking and management rights under the settlement agreement are "interwoven with the rights of the owner of the Headquarters Facility." Without ownership of the Headquarters Facility, the value of the parking and management rights to Jamboree would be significantly reduced, if not altogether eliminated. Consequently, Crow Operating would be prevented from realizing the full value of its assets, in conflict with a fundamental bankruptcy policy. *In re Jamesway Corp.*, 201 B.R. 73, 79 (Bankr.S.D.N.Y.1996). Therefore, we conclude that the change in ownership provision was properly denied effect under § 365(f) as a de facto anti-assignment clause.

 Finally, we conclude the bankruptcy court had sufficient evidence before it to determine the validity of the change in ownership provision. Under California law, if a contract's terms are unambiguous, a court may interpret the contract without recourse to extrinsic evidence. *See City of Santa Clara v. Watkins*, 984 F.2d 1008, 1012 (9th Cir.1993). Here, the settlement agreement, read in conjunction with the definitions and exhibits set forth in the reciprocal easement agreement, substantiates the court's conclusion that the rights under the settlement agreement are interwoven with ownership of the Headquarters Facility. To the extent that factual findings were necessary to its determination, the evidence in the record is more than sufficient to dispel any suggestion of clear error. The declarations of Janine Padia and Suzanne Uhland amply document the additional expense to Jamboree caused by Crow Development's attempt to terminate the parking and management rights under the settlement agreement.

AFFIRMED.